UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

XPERTUNIVERSE, INC.,

    Plaintiff,

v.

CISCO SYSTEMS, INC.,

    Defendant.

Case No. 17-cv-03848-RS

**ORDER DENYING MOTIONS TO TRANSFER, STAY, OR STRIKE; AND GRANTING IN PART, DENYING IN PART, MOTION TO DISMISS**

## I. INTRODUCTION

Defendant Cisco Systems moves to transfer this case to the District of Delaware based on first-to-file principles, or stay the action pending the resolution of Cisco's declaratory judgment action in Delaware. In the alternative, Cisco requests that the action be dismissed for failure to state a claim, or that immaterial and impertinent allegations be stricken. The motions to transfer, stay, and strike are denied, and the motion to dismiss is denied except with respect to the claim for willful infringement. That claim is dismissed with leave to amend.

## II. BACKGROUND

Plaintiff XpertUniverse is a technology company that is dedicated to developing innovative computer software and systems related to expert location, real-time interaction, and business intelligence solutions. The company has focused on developing improved computer-based systems and techniques that enable individuals who need assistance or have questions about certain topics to connect and interact in real-time with the best available experts who have the appropriate

knowledge and expertise. Among the patents that XpertUniverse has been awarded by the U.S. Patent and Trademark Office to protect aspects of its expert location technology is U.S. Patent No. 7,499,903, entitled "Semantic to Non-Semantic Routing For Locating a Live Expert." The claims of the '903 patent are generally directed to, *inter alia*, new and improved computer-based expert location systems and methods that utilize a novel data representation architecture and multi-layered interface to locate appropriate experts and connect them with individuals who are seeking assistance with a particular inquiry.

In March 2009, XpertUniverse filed a complaint against Cisco in the U.S. District Court for the District of Delaware, which included a claim of infringement of the '903 patent by Cisco's Remote Expert product suite. The Remote Expert products provided a computer-based expert location system that allowed users to directly, or with the assistance of a "concierge," select categories of assistance or inquiry topics through a graphical user interface and then connect and interact in real-time with experts who had the relevant skills to assist the user with the selected inquiry. In a 2013 trial, a jury found that versions 1.5 and 1.8 of Cisco's Remote Expert product infringed the '903 patent. In a post-trial ruling, the Delaware court set aside the jury's finding of fraud by concealment and its damages award, but did not disturb the jury's findings on the issue of infringement. XpertUniverse appealed the fraud claim decision to the Federal Circuit, which affirmed the lower court on January 21, 2015. XpertUniverse filed this action in July 2017, alleging continued infringement of the '903 patent in Cisco's Remote Expert versions 1.9 through 11.0, and products that incorporate Remote Expert. Cisco subsequently filed a mirror-image declaratory judgment action in the District of Delaware and now seeks to transfer this case to that jurisdiction. In the alternative, Cisco moves to stay this case pending resolution of the current Delaware action. If this Court is not inclined to transfer or stay, Cisco requests that the complaint be dismissed or that certain allegations be stricken.

### III. LEGAL STANDARD

**A. Motion to Transfer**

    **a. First-to-File**

Order on Motions to Transfer, Stay, Dismiss, or Strike
Case No. 17-cv-03848-RS
2

The "first-to-file" rule is a "generally recognized doctrine of federal comity which permits a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district." *Pacesetter Sys., Inc. v. Medtronic Inc.*, 678 F.2d 93, 94-95 (9th Cir. 1982). The rule "favors the forum of the first-filed action, whether or not it is a declaratory action," *see Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993), in the service of "promot[ing] judicial efficiency and prevent[ing] the risk of inconsistent decisions that would arise from multiple litigations of identical claims." *Interactive Fitness Holdings, LLC v. Icon Health & Fitness, Inc.*, No. 10–CV– 04628–LHK, 2011 WL 1302633, at *2 (N.D. Cal. Apr. 5, 2011). The rule "should not be disregarded lightly." *Alltrade, Inc. v. Uniwield Prods., Inc.*, 946 F.2d 622, 625 (9th Cir. 1991). That said, it is "not a rigid or inflexible rule to be mechanically applied, but rather is to be applied with a view to the dictates of sound judicial administration." *Pacesetter*, 678 F.2d at 95.

In applying the rule, courts focus primarily on the chronology of the filings, the identity of the parties, and whether the issues presented in the successive actions "substantially overlap." *Intersearch Worldwide, Ltd. v. Intersearch Grp., Inc.*, 544 F. Supp. 2d 949, 957 (N.D. Cal. 2008). The analysis may also encompass consideration of the "convenience factors" set forth in the transfer statute, 28 U.S.C. § 1404(a), including "the convenience and availability of witnesses, absence of jurisdiction over all necessary or desirable parties, possibility of consolidation with related litigation, or considerations relating to the interest of justice." *Micron Tech., Inc. v. Mosaid Techs., Inc.*, 518 F.3d 897, 904–05 (Fed. Cir. 2008).

**b. 28 U.S.C. § 1404(a)**

Section 1404(a) gives a district court discretion to transfer a civil action "to any other district or division where it might have been brought or to any district or division to which all parties have consented." Under the Supreme Court's recent decision in *TC Heartland LLC v. Kraft Foods Group Brands LLC*, 137 S. Ct. 1514 (2017), the patent venue statute, 28 U.S.C. § 1400(b), is the "sole and exclusive provision controlling venue in patent infringement actions." *Id.* at 1519. The statute provides:

> Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business.

According to *TC Heartland*, the term "resides" refers only to a defendant's state of incorporation. 137 S. Ct. at 1519. The Federal Circuit has clarified that the "regular and established place of business" inquiry generally requires three elements: "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant." *In re Cray Inc.*, 2017 WL 4201535, at *4 (Fed. Cir. Sept. 21, 2017) (finding that residence of two sales executives in the forum was not sufficient for venue under Section 1400(b)).

### B. Motion to Stay

A district court has "discretionary power to stay proceedings," *Lockyer v. Mirant Corp.*, 398 F.3d 1098 (9th Cir. 2005) (citing *Landis v. North America Co.* 299 U.S. 248, 254 (1936)). Among the *Landis* factors are the "possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962).

### C. Motion to Dismiss

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While "detailed factual allegations are not required," a complaint must have sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009) (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). A motion to dismiss a complaint under FRCP Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal under Rule 12(b)(6) may be based on either the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged under a cognizable legal theory." *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006,

1014 (9th Cir. 2013). When evaluating such a motion, the Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

When dismissing a complaint, leave to amend must be granted unless it is clear that the complaint's deficiencies cannot be cured by amendment. *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995). When amendment would be futile, dismissal may be ordered with prejudice. *Dumas v. Kipp*, 90 F.3d 386, 393 (9th Cir. 1996).

### D. Motion to Strike Pursuant to Rule 12(f)

Federal Rule of Civil Procedure 12(f) allows a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Motions under Rule 12(f) are generally disfavored, since such motions are frequently used as stalling tactics and since pleadings are of more limited importance in federal practice. *See Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004). Some courts also refuse to grant Rule 12(f) motions unless prejudice would result to the moving party from denial of the motion. *Platte*, 352 F. Supp. 2d at 1057.

## IV. DISCUSSION

### A. Motion to Transfer

#### 1. First to File

Cisco urges the Court to decline jurisdiction over this case and transfer it to the District of Delaware, where Cisco's subsequently filed declaratory judgment action of non-infringement against XpertUniverse is pending. Cisco concedes that as a technical matter, the instant action is first filed. Nonetheless, because the first-to-file rule is "not a rigid or inflexible rule to be mechanically applied," Cisco argues that "sound judicial administration" dictates that the Delaware action should be treated as the first case filed. *See Pacesetter*, 678 F.2d at 95. The crux of Cisco's position is that the current Delaware declaratory judgment action is an extension of the 2009 patent infringement suit, thereby giving it first-in-time status.

Cisco points out that XpertUniverse's complaint makes numerous references to the claims,

trial, post-trial motions, judgment, and appeal in the 2009 patent infringement suit. According to Cisco, the Delaware court retains jurisdiction over many of the allegations in the instant case. Moreover, the Delaware court is already familiar with the parties, the asserted patent, and the subject matter of the current suit. In support of its position that transfer to Delaware is appropriate, Cisco relies on *Activision Blizzard, Inc. v. Acceleration Bay LLC*, No. 16-cv-03375-RS, 2016 WL 4548985 (N.D. Cal. Sept. 1, 2016), and *Aventis Pharmaceuticals Inc. v. Teva Pharmaceuticals USA Inc.*, No. 06-cv-469, 2007 WL 2833296. In *Activision Blizzard*, the defendant company in a California patent case had commenced an earlier action in Delaware that was dismissed based on a defect in prudential standing. The defendant company re-filed new complaints in Delaware, which the court held to be functional amendments of the original complaint. Finding the action to be an improper attempt to preempt further litigation in Delaware, the court sent the case back to Delaware, where the dispute originated. In *Aventis Pharmaceuticals Inc.*, the plaintiff in Texas district court had 22 separate pending patent infringement suits in New Jersey and filed suit in Texas immediately after being denied a preliminary injunction by the New Jersey judge handling the coordinated actions. In response, the Texas defendants filed a mirror-image declaratory judgment action in New Jersey. The Texas district court sent the case to New Jersey on first-to-file principles.

      This case is different. There is no pending "first" case pending in Delaware, much less a coordinated set of 22 separate suits like those referenced in *Aventis Pharmaceuticals Inc*. Neither party disputes the fact that the 2009 patent infringement action proceeded to final judgment in 2014, which was subsequently affirmed by the Federal Circuit in 2015. XpertUniverse filed this action in July 2017, more than two years after the Federal Circuit issued its opinion. Unlike in *Activision Blizzard,* Cisco's suit for declaratory judgment in Delaware is not a functional amendment of pleadings in the 2009 patent infringement suit. Although there is overlap of parties and claims between Cisco's current declaratory judgment suit and the 2009 patent infringement suit, the present suit concerns alleged infringement of the '903 patent by Remote Expert versions 1.9 through 11.0, which were not adjudicated in the 2009 suit and did not exist during the 2013

trial. Cisco asserts that the Delaware court was "the first to have before it the question of whether Remote Expert 1.9 infringes the '903 patent," Reply at 5, but that court specifically declined to make factual findings as to the issue of continuing infringement based on the record from the 2013 trial. Noting that the relevant issues were insufficiently addressed at trial and in the briefs, the Delaware court suggested that XpertUniverse pursue claims regarding continuing infringement in a separate action, which they have done here. In patent cases, it will often be the case that the same patent is at issue in multiple subsequent lawsuits, yet not every suit is appropriately considered an extension of one earlier filed. Cisco's declaratory judgment action is a mirror-image response to the case here, and both cases will involve new factual inquiries involving the specifications of later Remote Expert versions and products that incorporate Remote Expert technology. Therefore, Cisco's arguments for treating its declaratory judgment as the "first case" are unavailing and do not form a basis for transferring this case to Delaware.

Other factors to consider include "(1) plaintiff's choice of forum, (2) convenience of the parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with the applicable law, (6) feasibility of consolidation of other claims, (7) any local interest in the controversy, and (8) the relative court congestion and time of trial in each forum." *Activision Blizzard Inc. v. Acceleration Bay LLC*, No. 16-CV-03375-RS, 2016 WL 4548985, at *7 (N.D. Cal. Sept. 1, 2016) (citation omitted). As is often the case, the balance of convenience factors is not particularly dispositive. XpertUniverse exercised its right as plaintiff to choose this forum, where Cisco is incorporated and has its regular place of business. California is certainly more convenient for Cisco, and the record does not yet indicate that Delaware would be considerably more convenient for the witnesses generally. A strong argument can be made that for judicial efficiency the Delaware court which has familiarity with the claims of the '903 patent asserted here would be a preferable forum. That said, a district court is not free to transfer away every case involving a patent, absent first-to-file status, that has been construed in some other district. Therefore, Cisco's motion to transfer this case to the District of Delaware is denied.

**2. Transfer Under 1404(a)**

Because Cisco cannot effect a transfer on first-to-file principles, the issue becomes whether transfer is appropriate under the general transfer statute. Setting convenience factors aside, the first inquiry is whether this action could have been brought in Delaware. The Supreme Court's decision in *TC Heartland* makes clear that it could not. Because Cisco is incorporated in California, it does not "reside" in Delaware under Section 1400(b). As a company headquartered in California, Cisco is also unable to demonstrate a "regular and established place of business" in Delaware under Section 1400(b). According to *TC Heartland*, venue is no longer proper simply on the basis that a court may exercise personal jurisdiction over the defendant. *See Percept Tech. v. Fove, Inc.*, No. 15-cv-2387, 2017 WL 3427971, at *1-2 (D. Nev. Aug. 8, 2017). Although Cisco does not address the issue in its opposition, there is no reason to believe that Cisco "regularly engaged in carrying on a substantial part of its ordinary business within [Delaware]," and that it "operates that business on a permanent basis, in a physical location, within [Delaware] over which it exercises some measure of control." *Thermolife Int'l, LLC v. F3 Nutrition, LLC*, No. 13-cv-6883, 2013 WL 12149682, at *1-2 (C.D. Cal. Dec. 9, 2013). Accordingly, Cisco's motion to transfer this case to the District of Delaware under Section 1404(a) must be denied.

### B. Motion to Stay

Should the Court be disinclined to transfer this case, Cisco asks for a stay of this action pending resolution of its declaratory judgment action in Delaware to avoid duplicative litigation. Most of Cisco's arguments in favor of a stay are premised on its contention that the 2009 patent infringement suit was the "first case," and therefore the court with greater expertise—the Delaware court—should attempt to resolve the present dispute first. The Delaware court, as noted above, is arguably in a better position to handle this litigation, having previously construed the relevant '903 patent claims that are the subject of this action. Unfortunately, Cisco advances no legal basis to stay this case in favor of a later-filed declaratory judgment action in Delaware. As explained above, Cisco's view of the 2009 action as the true "first case" involves an ultimately untenable interpretation of the first-to-file rule. Assuming the more straightforward stance that this case is the first filed, the balance of equities does not tip toward a stay, particularly because Cisco

can demonstrate no hardship from having to litigate in its home state. Should the strain of litigating in two states at once become too great, Cisco has the option of moving to stay or dismiss its declaratory judgment action in Delaware. Accordingly, Cisco's motion to stay this case is denied.

**C. Motion to Dismiss**

Cisco argues in the alternative that the complaint should be dismissed as deficient for failure to address the 2009 Delaware court's decision regarding the products accused of infringement here, and failure to state a plausible claim of infringement for any product specified. Neither party disputes the principle that in light of the December 1, 2015, amendments to the Federal Rules of Civil Procedure that abrogated Rule 84, a claim of patent infringement is evaluated under the plausibility standard of *Iqbal/Twombly*. In light of this change, several district courts have taken the view that "a complaint does not satisfy the standard of *Twombly* and *Iqbal* where it does not at least contain factual allegations that the accused product practices every element of at least one exemplary claim." *Novatiz, Inc. v. inMarket Media, LLC*, No. 16-cv-6795-EJD, 2017 WL 2311407, at *3 (N.D. Cal. May 26, 2017) (collecting cases).

Cisco first asserts that XpertUniverse's allegations are not plausible because the 2009 Delaware court indicated in its post-trial opinion that XpertUniverse had failed to show the post-trial versions of Remote Expert were not "colorably different from the old version, or that the new version infringes." Mtn. to Transfer at 9 (citing *XpertUniverse, Inc. v. Cisco Systems, Inc.*, No. 09-157-RGA, 2013 WL 6118447 at *10 (D. Del. Nov. 20, 2013)). XpertUniverse responds that judicial notice of another court's opinion for the truth of the facts asserted therein is inappropriate in the 12(b)(6) context. *See Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001). XpertUniverse also disputes the contention that the 2009 Delaware court made an affirmative factual finding on whether the newer versions of Remote Expert infringed the '903 patent. Indeed, the Delaware court appears to reference colorable differences between the older and newer versions of Remote Expert to support its rejection of XpertUniverse's request that the newer products be included in the 2013 trial relief. The Delaware court concluded that there was not

enough evidence before it to grant XpertUniverse's post-verdict request for relief at that juncture. Therefore, the Delaware court's opinion does not impact the plausibility of the allegations asserted here.

Cisco next challenges the sufficiency of XpertUniverse's allegation of infringement by "Cisco's Remote Expert products, as well as other products, platforms, offerings, and solutions that incorporate Cisco's Remote Expert products or similar technology (including, but not limited to, Cisco's Unified Communications and Unified Contact Center product suites)." Compl. ¶ 77. According to Cisco, these allegations are overbroad and fail to demonstrate that the "accused product practices every element of at least one exemplary claim." *Novitaz*, 2017 WL 2311407, at *3. Specifically, Cisco observes that the vagueness of the product allegations fail to put Cisco on notice as to which products are being challenged, and XpertUniverse has not made a showing that these products meet any limitation of any claim of the '903 patent.

In response, XpertUniverse argues that it has adequately mapped the claim elements for Remote Expert 11.0. *See generally* Compl. ¶¶ 79-87. It is unclear whether Cisco seeks dismissal of infringement claims relating to all other products including other versions of Remote Expert. Cisco argues that XpertUniverse inadequately alleges infringement of any product other than Remote Expert 11.0, yet asks the Court to "dismiss XU's infringement allegations as to all products other than Remote Expert" without specifying a version number. Mtn. to Transfer at 11. Absent some clarification, it is assumed that "Remote Expert" refers to versions 1.9 through 11.0. With respect to the other products challenged in the complaint, Cisco notes that XpertUniverse does not allege with specificity how each product incorporates Remote Expert technology. In the context-specific task of reviewing a complaint for plausibility, "a formal charting of patent claim elements against each accused product" is not always necessary. *Novitaz*, 2017 WL 2311407, at *3. Although XpertUniverse does challenge a broad range of products, it limits the scope to products that incorporate Remote Expert, a product for which it has mapped the claim elements of the '903 patent. XpertUniverse has met its burden of alleging infringement with respect to the products listed in its complaint.

Finally, Cisco challenges XpertUniverse's claims of willful and deliberate infringement, which entitle a successful plaintiff to enhanced damages under 35 U.S.C. § 284 and reasonable attorneys' fees and costs. XpertUniverse alleges that "[s]ince the final judgment of patent infringement against Cisco in the First Case, Cisco has known that its Remote Expert product infringes the '903 Patent," that "Cisco has continued to deliberately and wantonly infringe the '903 Patent by, among other things, selling, offering for sale, and distributing its Remote Expert products and technology," and that "Cisco has acted and is continuing to act despite an objectively high likelihood that its actions constitute infringement of a valid patent and Cisco knew or should have known of that objectively high risk." Compl. ¶¶ 89-91. Although XpertUniverse has alleged knowledge and continued infringement, it needs to do more to show that Cisco has engaged in "egregious cases of misconduct beyond typical infringement" that could possibly warrant enhanced damages. *See Halo Elec., Inc. v. Pulse Elec., Inc.*, 136 S. Ct. 1912, 1935 (2016).[1] Cisco for its part maintains that it accepted the Delaware court's infringement judgment against Remote Expert versions 1.5 and 1.8 and proceeded with a design-around in subsequent versions. Disagreement about the existence of continued infringement does not necessarily indicate willful or deliberate misconduct. Therefore, XpertUniverse's claim for willful infringement is denied with leave to amend.

**D. Motion to Strike**

Should the Court decline to transfer, stay, or dismiss, Cisco urges the Court at minimum to strike certain allegations in the complaint pursuant to Federal Rule of Civil Procedure 12(f). Cisco asserts that paragraphs 2-5 and 42-44 of the complaint relate solely to the prior relationship between XpertUniverse and Cisco and are immaterial to this case, which concerns Cisco's sales of products after the jury verdict in the earlier Delaware case. Rule 12(f) motions are generally disfavored absent exceptional circumstances, which are not present in this case. Given that

---

[1] XpertUniverse's argument that *Halo Electric* did not create a different pleading standard for willful infringement is irrelevant because its willful infringement claim fails the *Iqbal/Twombly* test.

information regarding the parties' prior relationship provides some useful background to the present dispute and does not seriously prejudice Cisco's interests, Cisco's motion to strike paragraphs 2-5 and 42-44 of the complaint is denied.

## V. CONCLUSION

For the reasons set forth above, Cisco's motions to transfer, stay, or strike are denied. Cisco's motion to dismiss the complaint is denied with respect to all claims except willful infringement. XpertUniverse's claim for willful infringement is therefore dismissed with leave to amend.

**IT IS SO ORDERED**.

Dated: October 11, 2017

RICHARD SEEBORG
United States District Judge