| | |
|---|---|
| K. Lee Marshall (SBN 277092)<br>Alexandra C. Whitworth (SBN 303046)<br>BRYAN CAVE LLP<br>Three Embarcadero Center, 7th Floor<br>San Francisco, CA 94111-4078<br>Telephone: (415) 675-3444<br>Facsimile: (415) 675-3434<br>klmarshall@bryancave.com<br>alex.whitworth@bryancave.com<br><br>J. Bennett Clark (*pro hac vice*)<br>Daniel A. Crowe (*pro hac vice*)<br>BRYAN CAVE LLP<br>One Metropolitan Square<br>211 North Broadway, Suite 3600<br>St. Louis, MO 63102<br>Telephone: (314) 259-2000<br>Facsimile: (314) 259-2020<br>ben.clark@bryancave.com<br>dacrowe@bryancave.com<br><br>Joseph J. Richetti (*pro hac vice*)<br>Alexander D. Walden (*pro hac vice*)<br>BRYAN CAVE LLP<br>1290 Avenue of the Americas<br>New York, NY 10104<br>Telephone: (212) 541-2000<br>Facsimile: (212) 541-4630<br>joe.richetti@bryancave.com<br>alexander.walden@bryancave.com<br><br>*Attorneys for Plaintiff XpertUniverse, Inc.* | **DUANE MORRIS LLP**<br>Richard L. Seabolt (CA SBN 67469)<br>rlseabolt@duanemorris.com<br>Patrick S. Salceda (CA SBN 247978)<br>psalceda@duanemorris.com<br>One Market Plaza<br>Spear Tower, Suite 2200<br>San Francisco, CA 94105-1127<br>Telephone: (415) 957-3084<br>Facsimile: (650) 618-2713<br><br>**DESMARAIS LLP**<br>John M. Desmarais (NY SBN 2261782)<br>Admitted *Pro Hac Vice*<br>jdesmarais@desmaraisllp.com<br>Tamir Packin (SBN 317249)<br>tpackin@desmaraisllp.com<br>C. Austin Ginnings (NY SBN 4986691)<br>Admitted *Pro Hac Vice*<br>aginnings@desmaraisllp.com<br>Lindsey Miller (NY SBN 5095740)<br>Admitted *Pro Hac Vice*<br>lmiller@desmaraisllp.com<br>230 Park Avenue<br>New York, New York 10169<br>Telephone: (212) 351-3400<br>Facsimile: (212) 351-3401<br><br>*Attorneys for Defendant*<br>CISCO SYSTEMS, INC. |

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| XPERTUNIVERSE, INC.<br><br>      Plaintiff,<br><br>  vs.<br><br>CISCO SYSTEMS, INC.<br><br>      Defendant. | Case Number: 3:17-cv-03848-RS<br><br>STIPULATION & ORDER RE:<br>DISCOVERY OF ELECTRONICALLY<br>STORED INFORMATION FOR PATENT<br>LITIGATION |

Upon the stipulation of the parties, the Court ORDERS as follows:

1. This Order supplements all other discovery rules and orders. It streamlines Electronically Stored Information ("ESI") production to promote a "just, speedy, and inexpensive determination of this action, as required by Federal Rule of Civil Procedure 1." This order does not govern source code, which is governed by the Stipulated Protective Order in this action.

2. This Order may be modified in the Court's discretion or by stipulation. The parties shall jointly submit any proposed modifications within 30 days after the Federal Rule of Civil Procedure 16 Conference.

3. As in all cases, costs may be shifted for disproportionate ESI production requests pursuant to Federal Rule of Civil Procedure 26. Likewise, a party's nonresponsive or dilatory discovery tactics are cost-shifting considerations.

4. A party's meaningful compliance with this Order and efforts to promote efficiency and reduce costs will be considered in cost-shifting determinations.

5. The parties are expected to comply with the District's E-Discovery Guidelines ("Guidelines") and are encouraged to employ the Checklist for Rule 26(f) Meet and Confer regarding Electronically Stored Information.

6. Except as otherwise set forth herein, absent reasonable justification, general ESI production requests under Federal Rules of Civil Procedure 34 and 45, or in compliance with a mandatory disclosure requirement of this Court, shall not include metadata. However, fields showing the date and time that the document was sent and received, as well as the complete distribution list and the filename and file extension, shall generally be included in the production if such fields exist and the producing party or the producing party's vendor shall include the following fields: (a) BEGBATES; (b) ENDBATES; (c) BEGATTACH; (d) ENDATTACH; (e) CUSTODIAN; and (f) CONFIDENTIALITY.

7. Absent agreement of the parties or further order of this court, the following parameters in paragraphs A-J shall apply to ESI production:

A. **General Document Image Format**.

8. Each electronic document shall be produced in either: single-page Tagged Image

File Format ("TIFF") format or in native format or in a format otherwise mutually agreed upon by the parties.

9. TIFF files shall be single page and each page footer shall bear a unique production number and appropriate confidentiality designation, if any. Each TIFF file shall be named with the unique production number followed by the appropriate file extension. Load files shall be provided to indicate the location and unitization of the TIFF files. If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as they existed in the original document. A party that receives a document produced in TIFF format may make a reasonable request to receive the document in its native format, and upon receipt of such a request, the producing party shall produce the document in its native format. The parties shall be cooperative and negotiate in good faith regarding the request. If the parties reach an impasse regarding the form of production, the party seeking production in native format can apply to the Court for resolution of the impasse. Excel, PowerPoint, Word, PDF, html, and other web-page related files and data ("Native Files") shall be produced in native format without requiring such a request.

10. Native format files shall be labeled with a unique production number and appropriate confidentiality designation, if any, in the file name or on the disks, hard drives, or other media containing such electronic files. Any file produced in native format shall be named to match the beginning Bates number of their corresponding entries in the database load files and shall be scanned for viruses. To the extent any party prints native format files (either to PDF or to paper), that party may not modify the native file before printing, except that the printed copy shall contain a footer with the production number and confidentiality designation and that resizing and reformatting of native files for printing purposes are permissible so long as the witness has the ability to confirm that the data remains unchanged from the original produced native file. For the purposes of page identification, a party may include an extension on the production number that indicates the page number. E.g., Document XU00001, may include the production number XU00001.001 on the first page, XU00001.002 on the second page, and so forth.

B. **Text-Searchable Documents.**

11. No party has an obligation to make its production text-searchable; however, if a party's documents already exist in text-searchable format independent of this litigation, or are converted to text-searchable format for use in this litigation, including for use by the producing party's counsel, then such documents shall be produced in the same text-searchable format at no cost to the receiving party.

C. **Database Load Files.**

12. A production shall be provided with (a) an ASCII delimited data file (.dat) using Concordance default delimiters, and (b) an Opticon (Concordance Image) image load file (.opt) that can be loaded into Concordance version 10 or above as well as Relativity. In addition to the metadata fields identified herein each .dat file shall include links to multi-page (document level) text files ("Text Path").

D. **No Backup Restoration Required.**

13. Absent a showing of good cause, no party need restore any form of media upon which backup data is maintained in a party's normal or allowed processes, including but not limited to backup tapes, disks, SAN, and other forms of media, to comply with its discovery obligations in the present case.

E. **Voicemail and Mobile Devices.**

14. Voice-mails, instant messages and other non-email forms of electronic messages, and data from PDAs and mobile phones (collectively, "PDA Data") need not be collected initially in response to production requests, although the parties shall take reasonable efforts to preserve relevant data from sources and custodians likely to have such data. The parties will meet and confer regarding whether there is reasonable justification for production of PDA Data at any time after review of the parties' initial document productions and/or after email productions, one or more depositions and/or further discovery.

F. **De-duplication.**

15. Each producing party shall de-duplicate ESI on a global level (across all custodians)

prior to production.[1] The basis for such de-duplication shall be the MD5 or SHA1 hash values, or some other later agreed to de-duplication method such as full text de-duplication. The parties shall instruct their ESI processing vendors to take attachments into account for generating either the MD5 or SHA1 hash values for email. The custodians of de-duplicated copies of documents should be included in the database load file, either in the CUSTODIAN field, or alternatively, in a field for duplicative or other custodians (e.g., DUPE CUSTODIAN).

G. **Parents and Attachments.**

16. Each party may produce email and email attachments in native format, provided that the manner of production preserves the link between each email and its attachment. Parent documents and attachments, enclosures or exhibits are considered separate documents for the purposes of assessing responsiveness to email production requests. To the extent parent documents with attachments, enclosures, or exhibits are produced, they should be produced so as to maintain the relationship between the parent document and associated attachments, enclosures, or exhibits; e.g., they should be produced with attachments immediately following the parent email and with the entire production range for the email and attachment (e.g., BEGATTACH and ENDATTACH) assigned to the metadata fields for the email and attachment. Email shall be produced in a manner that preserves all bibliographic metadata (including without limitation the custodian, the sender, all addressees, the exact date and time on which the email was received and/or sent, and the subject or "re:" line).

H. **Technical Requirements.**

17. Consistent with the foregoing, the parties shall make reasonable efforts to provide data in accordance with the following technical requirements, to the extent applicable:

    1. DAT file (using Concordance delimiters) containing Bates, metadata, OCR and Native path information. Standard fields include: ProdBegNo,

---

[1] The deduplication need not occur across files that were produced in the previous Delaware action, *XpertUniverse, Inc. v. Cisco Systems, Inc.*, Case No. 1:09-cv-00157-RGA The parties are working together to ensure that they each have complete productions from that case.

ProdEndNo, BegAttach, EndAttach, Email Sent Date, Doc Creation Date, Doc Modified Date, DocType, PGCount, Custodian, Author, Recipient(s), CC, BCC, Subject, Doc Title, File Extension, File Size, File Name, Hash Value, Native Link Path, and OCR Link Path.

2. Single-page tiff images (named after Bates numbers)
3. Document level OCR text files (named after document Begin Bates numbers)
4. OPT and/or LFP load file
5. The production volume subfolders should be organized as follows:
   a. Data folder containing the DAT and OPT/LFP files
   b. OCR folder containing the OCR text files
   c. Images folder containing the tiff images
   d. Native folder for native files

I. **Email Production Requests.**

18. General ESI production requests under Federal Rules of Civil Procedure 34 and 45 shall not include email or other forms of electronic correspondence (collectively "email"). To obtain email, parties must propound specific email production requests.

19. Email production requests shall only be propounded for specific issues, rather than general discovery of a product or business.

20. The parties shall meet and confer as soon as feasible to define the scope of responsive data, particularly email, that will serve as the basis for discovery. Specifically, the Parties shall meet and confer and either reach agreement or a defined impasse on the sources of potentially relevant and responsive data, including (a) identification of key custodians; (b) search terms and/or methodology; (c) type and categories of documents and files that comprise responsive data (e.g., spreadsheets, databases, emails, notes); and (d) identification of relevant data locations.

21. Email production requests shall be phased to occur after the parties have met and conferred regarding the scope of responsive data as described in the foregoing paragraph..

22. Email production requests shall identify the custodian, search terms, and time frame. The parties shall cooperate to identify the proper custodians, proper search terms and proper timeframe as set forth in the Guidelines.

23. Each requesting party shall limit its email production requests to a total of five

custodians per producing party for all such requests. The parties may jointly agree to modify this limit without the Court's leave. The Court shall consider contested requests for additional custodians, upon showing a distinct need based on the size, complexity, and issues of this specific case. Cost-shifting may be considered as part of any such request.

24. Each requesting party shall limit its email production requests to a total of ten search terms per custodian per party. The parties may jointly agree to modify this limit without the Court's leave. The search terms shall be narrowly tailored to particular issues. Indiscriminate terms, such as the producing company's name or its product name, are inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction. A conjunctive combination of multiple words or phrases (e.g., "computer" and "system") narrows the search and shall count as a single search term. A disjunctive combination of multiple words or phrases (e.g., "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word. Use of narrowing search criteria (e.g., "and," "but not," "w/x") is encouraged to limit the production and shall be considered when determining whether to shift costs for disproportionate discovery.

25. Once a requesting party makes an email production request (i.e., identifies a custodian, time frame, and search terms), the producing party shall apply the request and within two weeks provide the requesting party with the total number of document hits responsive to the request. To the extent feasible, the parties shall cooperate so that search terms do not result in an unduly burdensome number of documents. To this end, the producing party shall identify the number of document hits for each search term for each custodian. The requesting party shall then meet and confer with the responding party in a reasonable effort to narrow any term that the responding party reasonably believes creates an undue burden by, for example, using narrowing search criteria as explained above, limiting the time period, or by replacing the term (to the extent feasible), while still capturing the intended scope of responsive data. In the event the parties do not agree on such narrowing, the producing party may request cost-shifting, and the Court may consider whether any party should bear reasonable costs caused by the production of documents in

excess of a reasonable number for any particular search term in light of the relative relevance and importance of the email production request and reasonableness of the proposed search term.

26. To the extent an email production request for a particular custodian results in fewer than twenty thousand responsive documents, that request shall be deemed presumptively reasonable, and the burden will shift to the producing party to identify any inappropriate search term(s). Once the parties agree upon an email production request (i.e., the custodian, time frame, and search terms), the producing party shall produce all documents responsive to that request except for those upon which there is a claim of privilege or work product.

27. The Court shall consider contested requests for additional search terms per custodian, upon showing a distinct need based on the size, complexity, and issues of this specific case. Should a party serve email production requests with search terms beyond the limits agreed to by the parties or granted by the Court pursuant to this paragraph, this shall be considered in determining whether any party shall bear all reasonable costs caused by such additional discovery in light of the relative relevance and importance of the email production request and reasonableness of the proposed search term.

28. Nothing in this Order prevents the parties from agreeing to use technology assisted review and other techniques insofar as their use improves the efficacy of discovery. Such topics should be discussed pursuant to the District's E-Discovery Guidelines.

**IT IS SO STIPULATED**, through Counsel of Record.

Dated: March 5, 2018      */s/ Joseph J. Richetti*
                           Joseph J. Richetti (*pro hac vice*)
                           *Attorneys for Plaintiff XpertUniverse, Inc.*

Dated: March 5, 2018      */s/ Richard L. Seabolt*
                           Richard L. Seabolt
                           *Attorneys for Defendant Cisco Systems, Inc.*

Pursuant to L.R. 5-1, I, Joseph J. Richetti, hereby attest that all signatures listed above, on whose behalf this Stipulation is submitted.

Dated: March 5, 2018

*/s/ Joseph J. Richetti*
Joseph J. Richetti (*pro hac vice*)
*Attorneys for Plaintiff XpertUniverse, Inc.*

**IT IS ORDERED** that the forgoing Stipulation is approved.

Dated: 3/12/18

UNITED STATES DISTRICT/~~MAGISTRATE~~ JUDGE