UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

XPERTUNIVERSE, INC.,

Plaintiff,

v.

CISCO SYSTEMS, INC.,

Defendant.

Case No. 17-cv-03848-RS

**ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

**I. INTRODUCTION**

Plaintiff XpertUniverse ("XU") brings this suit against defendant Cisco Systems ("Cisco"), alleging infringement of U.S Patent No. 7,499,903 ("the '903 Patent") by versions of a product called Remote Expert, and other products that allegedly incorporate Remote Expert. The claims of the '903 Patent pertain to new and improved computer-based expert location systems and methods that utilize a novel data representation architecture and multi-layered interface to locate appropriate experts and connect them with individuals who are seeking assistance with a particular inquiry. Cisco now moves for judgment on the pleadings, arguing that the '903 Patent is directed to patent-ineligible subject matter under 35 U.S.C. § 101. In response, XU asserts that because Cisco's challenges to the validity of the '903 Patent were rejected in a prior action between the parties, it is estopped from attacking the validity of the patent in this litigation. XU therefore moves for partial summary judgment on the issue of whether Cisco is precluded from pursuing an invalidity challenge under Section 101 or any of the other possible grounds for invalidity raised in

1  its third affirmative defense. Because validity of the '903 Patent was an issue that was raised and

2  litigated to final judgment in a prior action between the parties, XU's motion for partial summary

3  judgment on collateral estoppel grounds is granted and Cisco is precluded from raising new

4  invalidity arguments. Even if Cisco were not precluded from bringing a Section 101 challenge, it

5  nonetheless fails to demonstrate that the '903 Patent is directed to patent-ineligible concepts. For

6  that additional reason, Cisco's motion for judgment on the pleadings under 35 U.S.C. § 101 is

7  denied.

## II.  BACKGROUND[1]

Plaintiff XU is a technology company that is focused on developing innovative computer software and systems related to expert location, real-time interaction, and business intelligence solutions. The company seeks to develop improved computer-based systems and techniques that enable individuals who need assistance or have questions about certain topics to connect and interact in real-time with the best available experts who have the appropriate knowledge and expertise. Among the patents that XU has been awarded by the U.S. Patent and Trademark Office to protect aspects of its expert location technology is U.S. Patent No. 7,499,903, entitled "Semantic to Non-Semantic Routing For Locating a Live Expert." The claims of the '903 Patent are generally directed to, *inter alia*, new and improved computer-based expert location systems and methods that utilize a novel data representation architecture and multi-layered interface to locate appropriate experts and connect them with individuals who are seeking assistance with a

---

[1] Pursuant to Civil Local Rules 7-11 and 79-5, Cisco moves to seal portions of its opposition to XU's motion for partial summary judgment, and Exhibits 14, 15, and 20 to the Declaration of C. Austin Ginnings. Exhibits 14 and 15 contain confidential information about Cisco's business strategy and confidential sales figures. Accordingly, Cisco's request to seal portions of those exhibits and corresponding parts of its opposition brief is granted. Exhibit 20, however, is redacted in its entirety and appears to recount the general sequence of proceedings in the Delaware Action. Because there is no indication that the entire docket of that litigation has been sealed, it is unexplained why any portion of Exhibit 20 should be filed under seal. Therefore, the motion to seal Exhibit 20 and its corresponding portion of the opposition brief is denied. Should it choose to do so, Cisco may renew its request to seal Exhibit 20 within 10 days of the date of this order by providing sufficient justification for sealing the text in its entirety or by narrowing the scope of the proposed redactions.

particular inquiry.

In March 2009, XU filed a complaint against Cisco in the U.S. District Court for the District of Delaware (the "Delaware Action"), which included a claim of infringement of the '903 Patent by Cisco's Remote Expert product suite. The Remote Expert products provided a computer-based expert location system that allowed users, with the assistance of a "concierge," or directly to select categories of assistance or inquiry topics through a graphical user interface and then to connect and interact in real-time with experts who had the relevant skills to assist the user with the selected inquiry. In a 2013 trial, a federal jury found that versions 1.5 and 1.8 of Cisco's Remote Expert product infringed the '903 Patent. In a post-trial ruling, the district court set aside the jury's finding of fraud by concealment and its damages award, but did not disturb the jury's findings on the issue of infringement. XU appealed the fraud claim decision to the Federal Circuit, which affirmed the lower court on January 21, 2015. XU filed this action in July 2017, alleging continued infringement of the '903 Patent in Cisco's Remote Expert versions 1.9 through 11.0, and products that incorporate Remote Expert.

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed–but early enough not to delay trial–a party may move for judgment on the pleadings." A motion for judgment on the pleadings is "functionally identical" to a Rule 12(b)(6) motion to dismiss for failure to state a claim. *See Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). "Judgment on the pleadings is properly granted when there is no material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Fleming v. Picard*, 581 F.3d 922, 925 (9th Cir. 2009). When deciding a 12(c) motion, all material allegations in the complaint are accepted as true and construed in the light most favorable to the non-moving party. *Turner v. Cook*, 362 F.3d 1219, 1225 (9th Cir. 2004).

Summary judgment is proper "if the pleadings and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The purpose of summary

judgment "is to isolate and dispose of factually unsupported claims or defenses." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings and admissions on file, together with the affidavits, if any which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323 (citations and internal quotation marks omitted). If it meets this burden, the moving party is then entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of the case with respect to which it bears the burden of proof at trial. *Id.* at 322-23.

The non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-moving party cannot defeat the moving party's properly supported motion for summary judgment simply by alleging some factual dispute between the parties. To preclude the entry of summary judgment, the non-moving party must bring forth material facts, *i.e.*, "facts that might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 588 (1986).

The court must draw all reasonable inferences in favor of the non-moving party, including questions of credibility and of the weight to be accorded particular evidence. *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496 (1991) (citing *Anderson*, 477 U.S. at 255); *Matsushita*, 475 U.S. at 588 (1986). It is the court's responsibility "to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." *T.W. Elec. Service v. Pacific Elec. Contractors*, 809 F.2d 626, 631 (9th Cir. 1987). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the

ORDER GRANTING PARTIAL SUMMARY JUDGMENT AND DENYING JUDGMENT ON THE PLEADINGS
CASE NO. 17-cv-03848-RS
4

non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587.

"If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . , the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or (4) issue any other appropriate order." Rule 56(e) (2010).

## IV. DISCUSSION

### A. Effect of the Prior Delaware Action

Cisco makes three arguments in favor of allowing its Section 101 challenge to go forward, all of which are unsuccessful. First, Cisco asserts that the Delaware Action has no preclusive effect on new patent invalidity defenses raised for the first time in this litigation. Second, even if preclusion is otherwise appropriate, Cisco contends the Section 101 challenge should be allowed in light of an intervening change in the law of unpatentable subject matter. Finally, Cisco argues that because it had little incentive to litigate the question of patent validity vigorously in the Delaware Action, application of collateral estoppel would be unfair in this case.

1. Collateral Estoppel

The doctrine of collateral estoppel, also known as issue preclusion, bars litigation of issues that have already been adjudicated in an earlier proceeding. In patent cases, the law of the circuit in which the district court sits is controlling with regard to general principles of collateral estoppel, although Federal Circuit law governs those "aspects of the collateral estoppel analysis that are particular to patent law." *Phil-Insul Corp. v. Airlite Plastics Co.*, 854 F.3d 1344, 1353 (Fed. Cir. 2017). Courts evaluating the appropriateness of collateral estoppel must consider whether three requirements are met: "(1) the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated; (2) the first proceeding ended with a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the first proceeding." *Roche Palo Alto LLC v. Apotex, Inc.*, 526 F. Supp. 2d 985, 994 (N.D. Cal. 2007) (citing *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 (9th

Cir. 2006)).

XU argues that because a jury specifically found Claim 12 of the '903 Patent was not invalid (RJN Ex. G)[2], and because Cisco unsuccessfully sought post-trial judgment as a matter of law on the question of validity, the issue was necessarily decided in the Delaware Action. Cisco takes a different view, asserting that the Delaware Action did not foreclose all future theories of patent invalidity, only those that were actually litigated. In other words, the central dispute between the parties is whether patent validity is a single issue, or whether each ground for asserting an invalidity defense—e.g. obviousness, preemption—is a separate issue.

While the Federal Circuit has yet to address squarely whether multiple theories of invalidity constitute "different" issues for collateral estoppel purposes[3], the majority of courts that have considered the question view patent validity as a single issue. *See, e.g., Finjan v. Blue Coat Sys., LLC*, No. 15-cv-03295, 2017 WL 7050646 at *11-12 (N.D. Cal. July 28, 2017) (where prior case involved a challenge to a patent as anticipated and the current case involved an obviousness challenge, the single "issue" in both cases was patent validity); *Roche Palo Alto*, 526 F. Supp. 2d at 994-95 (agreeing with other authorities in finding the relevant "issue" subject to preclusion is "the ultimate determination on patent validity itself."). As one district court explained in *Applied Medical Resources Corp. v. U.S. Surgical Corp.*, 352 F. Supp. 2d 1119 (C.D. Cal. 2005), "[t]he principles underlying invalidity challenges are fundamentally similar: they require proof by clear and convincing evidence that a claimed invention is not patentable." *Id.* at 1125. Accordingly, the court reasoned, the purportedly different "issues" identified by the defendant were simply particular arguments supporting an assertion of invalidity.

---

[2] XU moves for judicial notice of pleadings and court orders in the Delaware Action. The request for judicial notice is granted. *See Asdar Group v. Pillsbury, Madison & Sutro*, 99 F.3d 289, 290 n. 1 (9th Cir. 1996) (courts may take judicial notice of related pleadings and court orders).

[3] After the close of briefing, the parties filed a stipulated motion for leave to submit *Voter Verified, Inc. v. Election Sys. & Software LLC*, No. 2017-1930, 2018 WL 1882917 (Fed. Cir. Apr. 20, 2018) as supplemental authority in connection with XU's motion for partial summary judgment. Because *Voter Verified* raises issues that are relevant to this case, the motion is granted.

Cisco points to a contrary decision in *TASER Int'l, Inc. v. Karbon Arms, LLC*, 6 F. Supp. 3d 510 (D. Del. 2013), which concluded that different theories of invalidity were indeed separate "issues" for the purposes of collateral estoppel. *Id.* at 519 (citing 6 Annotated Patent Digest § 38:46). As XU notes, however, the district court in TASER did not provide reasoning beyond a citation to secondary authority. Accordingly, it is difficult to discern a principle distinguishing *TASER* from the numerous authorities with which it disagrees. Cisco also suggests that *Applied Medical*, along with other district decisions that rely upon its reasoning, may be distinguished by applying the Ninth Circuit's test for determining whether issues are "identical" for collateral estoppel purposes. Relying upon the Third Restatement of Judgments, the Ninth Circuit in *Kamilche Co. v. United States*, 53 F.3d 1059 (9th Cir. 1995), set out four factors for determining identity of issues: (1) whether there is substantial overlap between the evidence or argument presented in the prior case and the current one, (2) whether the current case involves the application of the same rule of law as the prior case, (3) whether pretrial preparation and discovery in the prior case would reasonably have been expected to uncover evidence or arguments raised in the current case, and (4) whether there is substantial overlap between the claims of the prior case and the current case.

According to Cisco, three out of the four *Kamilche* factors weigh in favor of not applying collateral estoppel to its Section 102 and 103 defenses, because it plans to present different prior art references from those offered in support of its Section 102 and 103 challenges in the Delaware Action. Although the same rule of law applies here, Cisco contends there is little overlap between the evidence and argument presented in both cases, and that pretrial preparation in the Delaware Action would not have uncovered the material it seeks to present now. Cisco also asserts there is no substantial overlap between the claims asserted here and in the Delaware Action, which mainly focused on XU's fraud and breach of contract claims, rather than patent infringement and validity. Finally, with respect to Section 101, Cisco claims that all four *Kamilche* factors, including application of different law, suggest that it is a distinct issue from that which was previously litigated. These arguments were duly considered and rejected in *Applied Medical*. In particular,

1    because patent invalidity on any grounds is a complete defense to an infringement claim, it is not

2    reasonable to assume that pretrial preparation in the Delaware Action would have embraced less

3    than all available invalidity arguments. *See Applied Medical*, 352 F. Supp. 3d at 1125. It would

4    defeat the principles of collateral estoppel for a party to avoid preclusion by simply offering facts

5    and arguments it could have presented in an earlier case but chose not to. Moreover, the facts of

6    *Kamilche* itself undermine Cisco's position. *Kamilche* involved a prior judicial determination that

7    the United States did not own a piece of disputed real property, which collaterally estopped the

8    government from later arguing ownership of the land based on a newly raised theory of adverse

9    possession. *See Kamilche*, at 1063. Thus, the logic of *Kamilche* suggests that Cisco's proposed

10   invalidity contentions, including its Section 101 challenge, are nothing more than "particular

11   arguments" directed towards an issue that has already been decided. *Id.*

12         The Federal Circuit's recent decision in *Voter Verified, Inc. v. Election Sys. & Software*

13   *LLC*, No. 2017-1930, 2018 WL 1882917 (Fed. Cir. Apr. 20, 2018), admittedly casts some doubt

14   on the conclusion articulated above. There, the Circuit held issue preclusion did not apply to

15   defendant's Section 101 defense because no evidence or argument relating to that defense was

16   presented in prior litigation, and because patent validity was not necessary to the prior judgment.

17   *Id.* at *4-5. That said, *Voter Verified* will not affect the disposition here for two reasons. First, in

18   reaching its decision, the Federal Circuit applied the Eleventh Circuit's test for issue preclusion,

19   which unlike the Ninth Circuit's inquiry, requires that the issue in question be actually raised and

20   that it be necessary to support the prior judgment. Therefore, the guidance from *Voter Verified* is

21   difficult to map onto the applicable Ninth Circuit analysis, specifically the question of whether

22   Section 101 is distinct from the general "issue" of patent validity. Second, as discussed in Part B

23   of this order, even if Cisco were not precluded from asserting nonpatentable subject matter as a

24   defense in this action, its Section 101 challenge to the validity of the '903 is without merit.

25         2.   <u>Intervening Change in the Law</u>

26         Cisco also argues that collateral estoppel should not bar its Section 101 defense because

27   *Alice Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014) represents a significant change in the

law justifying relitigation. A party seeking to invoke this exception to the general rule must demonstrate that three requirements are satisfied: (1) the law must have changed; (2) the decision sought to be reopened must have applied the old law; and (3) the change in law must compel a different result under the facts of the particular case. *See Dow Chem. Co. v. Nova Chem. Corp.*, 803 F.3d 620, 629 (Fed. Cir. 2015). Because the Federal Circuit has determined that *Alice* did not alter the governing law of Section 101, Cisco cannot show satisfaction of the first condition, and the second and third conditions need not be addressed.

*Alice* took the two-step framework for identifying patent-eligible applications involving otherwise ineligible subject matter, first articulated in *Mayo Collaborative Servs. v. Prometheus Labs.*, Inc., 132 S. Ct. 1282 (2012), and explained how the use of a computer fit into that analysis. *See Voter Verified, Inc. v. Election Sys. & Software LLC,* No. 2017-1930, 2018 WL 1882917 at *3 (Fed. Cir. Apr. 20, 2018) (holding that "*Alice* did not alter the governing law under § 101" because "it was merely applying the same test as it set out in *Mayo*, and did not materially change it."); *see also Encyclopedia Britannica, Inc. v. Dickstein Shapiro* LLP, 128 F. Supp. 3d 103, 110 (D.D.C. 2014) (finding "*Alice* merely clarified how courts should properly interpret § 101," but "did not overrule existing law regarding patent-eligibility."); *accord Horus Vision, LLC v. Applied Ballistics, LLC*, No. 5:13-cv-05460, 2014 WL 6895572 at *2 (N.D. Cal. Dec. 5, 2014) (denying defendant's request to amend invalidity contentions because it failed to show that *Alice* changed the law such that a previously unavailable defense had become available.). Moreover, even if *Alice* had constituted a change in the law, Cisco does not explain how pre-*Alice* law would have precluded Cisco from bringing a Section 101 defense. At most, *Alice* arguably might have allowed Cisco to bring a Section 101 challenge earlier in the course of the Delaware litigation, or provided stronger support for such a challenge. There is no evidence that a Section 101 defense was completely unavailable to Cisco under the framework set out in *Mayo*, or that such a challenge would have been futile prior to *Alice*. Therefore, Cisco's Section 101 challenge cannot escape collateral estoppel by virtue of the change of law exception.

### 3. Incentive to Litigate and Fairness Considerations

Cisco makes two final arguments in its effort to avoid collateral estoppel. Both are unpersuasive. First, Cisco asserts that a district court may decline to apply collateral estoppel where a party against whom preclusion is invoked had little incentive to litigate an issue in the first action, and did not in fact vigorously contest the issue. *See Maciel v. C.I.R.*, 489 F.3d 1018, 1023 (9th Cir. 2007). Because the infringement damages awarded in the Delaware Action were relatively small and less than the cost of appeal, Cisco argues, it had no incentive to appeal the jury's validity finding. *See Parklane Hosiery Co. v. Shore*, 439 U.S 322, 329 (1979) (citing *Berner v. British Commonwealth Pac. Airlines, Ltd.*, 346 F.2d 532 (2d Cir. 1965) (application of offensive collateral estoppel denied where defendant did not appeal an adverse judgment awarding damages of $35,000 and defendant was later sued for over $7 million)). While incentive to appeal a small damages award is a factor to be considered, particularly with respect to the application of offensive collateral estoppel, the overall circumstances of this case do not render unfair application of estoppel. In the Delaware Action, XU sought actual damages from Cisco, not merely nominal damages, and apparently indicated in its post-trial motions that it believed Cisco was continuing to infringe upon the '903 Patent. Thus, Cisco cannot plausibly claim it was completely blindsided by this later patent infringement action. As patent invalidity would have been a complete defense to XU's patent infringement claims in Delaware, there is no "genuine issue of material fact" as to whether Cisco had incentive to litigate its invalidity contentions against the '903 Patent with reasonable diligence.

Finally, Cisco argues that the Court should exercise its discretion and decline to apply collateral estoppel because to do otherwise would be unjust to Cisco. Specifically, Cisco asserts that XU made a strategic decision to accuse only certain of Cisco's products in the Delaware Action, even though the litigation could have embraced all the products that XU now accuses in this case. As a result of these tactics, Cisco says it had little incentive zealously to litigate the patent infringement issues in the Delaware Action and would be unfairly prevented from doing so here if collateral estoppel were to apply. These arguments are unavailing. Parties to litigation routinely position themselves so as to have an edge over their adversaries, and Cisco's decision to

push some aspects of the Delaware case more or less vigorously reflects its own strategic choices. Because Cisco had a full opportunity to challenge the validity of the '903 Patent in the Delaware Action, there is no injustice in precluding it from raising invalidity contentions in a later action involving the same patent.

### B. *Alice* Motion

The '903 Patent generally relates to an expert location system that facilitates real-time connections between customers with specific inquiries and live experts who can respond. Under Section 101 of the Patent Act, "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor . . . ." 35 U.S.C. § 101. The Supreme Court "has long held that this provision contains an important implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014). While the reasoning behind the exception is clear—"such discoveries are manifestations of . . . nature, free to all men and reserved exclusively to none," *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1293 (2012) (internal quotation marks and citations omitted)—the boundaries of the exception are not quite so obvious.

The *Alice* court highlighted "the concern that drives this exclusionary principle as one of pre-emption." *Alice*, 134 S. Ct. at 2354 (noting the delicate balance inherent in promoting progress, the primary object of patent law, and granting a monopoly, the means for accomplishing that goal). In other words, patents that seek wholly to preempt others from using a law of nature or an abstract idea—"the basic tools of scientific and technological work"—are invalid. *Id. Alice* warns, nonetheless, that "we treat carefully in construing this exclusionary principle lest it swallow all of patent law. At some level, all inventions . . . embody use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Id.* (internal quotation marks and citations omitted). A patent may thus "involve[] an abstract concept" so long as it is applied "to a new and useful end." *Id.* "Accordingly, in applying the § 101 exception, we must distinguish between patents that claim the buildin[g] block[s] of human ingenuity and those that integrate the

building blocks into something more, thereby transform[ing] them into a patent-eligible invention." *Id.* (internal quotation marks and citations omitted).

In evaluating whether claims are patent eligible, a court must first "determine whether the claims at issue are directed to one of those patent-ineligible concepts." *Alice*, 134 S. Ct. at 2355. "[T]he 'directed to' inquiry applies a stage-one filter to claims, considered in light of the specification, based on whether their character as a whole is directed to excluded subject matter." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016) (internal quotation marks omitted). Although there is no brightline rule for determining whether a claim is directed to an abstract idea, courts have articulated some guiding principles. When evaluating computer-related claims, courts look to whether the claims "improve the functioning of the computer itself," *Alice*, 134 S. Ct. at 2359, or whether "computers are invoked merely as a tool" to implement an abstract process. *Enfish*, 822 F.3d at 1336.

If the claims are directed to a patent-ineligible concept, a court must then "consider the elements of each claim both individually and as an ordered combination to determine whether the additional elements transform the nature of the claim into a patent-eligible application." *Id.* at 1334 (internal quotation marks and citations omitted). This step entails the "search for an inventive concept—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Alice*, 134 S. Ct. at 2355 (internal quotation marks and citations omitted). "For the role of a computer in a computer-implemented invention to be deemed meaningful in the context of this analysis, it must involve more than performance of well-understood, routine, [and] conventional activities previously known to the industry." *Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1347–48 (Fed. Cir. 2014). "[T]he mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Id.* at 1348. However, "an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." *BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016).

Cisco asserts that XU's claims are directed to patent-ineligible subject matter because they recite the abstract concept of connecting a customer with a question to an expert with an answer. This function, according to Cisco, is no different from that performed by a telephone operator. XU responds that the claims of the '903 Patent are directed towards a novel, multi-layered data structure using "semantic to non-semantic" routing techniques, which overcomes significant technological hurdles associated with prior art computer-based match and route systems. The present invention solves these problems by providing improved routing, flexibility, configurability, and scalability over prior computer-based systems.

Although the line between unpatentable abstract ideas and patentable subject matter is not always easy to discern, Cisco urges that this case is closely analogous to *24/7 Customer v. LivePerson, Inc.*, No. 15-cv-02897-JST, 2017 WL 2311272 (N.D. Cal. May 25, 2017), which invalidated certain patent claims that were directed towards abstract ideas such as "routing a call to a customer service agent based on information about the caller." *Id.* at *3. There, the court rejected the patent holder's assertion that the claims were aimed at a technological improvement. Because the claims of the patent only proposed general solutions to problems in prior art, the court concluded they were directed towards a specific result rather than a particular process or methodology. Here, Cisco characterizes Claim 12 of the '903 Patent as similarly result-oriented rather than directed at a specific means or method for achieving that result.

XU rejects Cisco's portrayal of the '903 Patent as merely reciting the use of a computer to accomplish a conventional activity previously performed by humans. Rather, the claims of the '903 Patent are directed towards specific, unconventional technical solutions to particular problems existing in prior art computer-based match and route systems. XU points to three Federal Circuit decisions that found these types of computer-based inventions patent-eligible under step one of the *Alice* analysis: *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. 2016); *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299 (Fed. Cir. 2016); *Visual Memory v. NVIDIA Corporation*, 867 F.3d 1253 (Fed. Cir. 2017). In *Visual Memory*, the Federal Circuit held that claims directed specifically towards an improvement to computer functionality are patent-eligible.

Because the claims at issue encompassed a memory system that improved upon the configurability of prior art memory systems, the court upheld the patent's validity under *Alice* step one. Similarly, the Federal Circuit has upheld claims reciting a self-referential table—for faster searching and more effective data storage—because the invention improved upon the functionality of conventional database structures, *see Enfish*, 822 F.3d at 1335, and claims reciting a set of automatic rules for computer-based animation, finding that prior art animation processes were not similarly rules-based, *see McRO*, 837 F.3d at 1314-15.

In *Thales Visonix v. United States*, 850 F.3d 1343 (Fed. Cir. 2017), the Federal Circuit determined that claims reciting a unique configuration of inertial sensors and the use of a mathematical equation for calculating the location and orientation of an object relative to a moving platform were patent-eligible under *Alice* step one. The Federal Circuit found that the patented system was directed at achieving greater accuracy over prior art systems, which measured motion relative to the earth and were prone to computational errors. In a similar fashion, XU argues that the '903 Patent is directed to a specific technical improvement: "an innovative, multi-layer database structure and semantic to non-semantic routing mechanism for computer match and route systems that enables the data records in these systems to be built, updated, reconfigured, and expanded more quickly and efficiently." Opp. to Mot. Judgment on the Pleadings at 16. Prior art computer-based match and route systems, XU explains, used fixed identifiers to create direct links between the inquiry categories and the experts in a database. As a result, making changes or updates to the system was costly and labor-intensive because it involved redoing the "hardwiring" of connections between inquiries and skills associated with each expert. See '903 Patent at 1:11-46. XU's claimed invention addresses this problem by associating both inquiry types in the inquiry type database and skills in the skill-set database with a numeric routing identifier. According to XU, this creates separation between the experts and inquiry types, which allows experts, skills, and/or inquiry types to be added, updated, and removed without affecting the rest of the database structure.

On balance, while XU's claims involve the abstract idea of connecting a customer with an

inquiry to a live expert, they are ultimately directed at a specific means or method of accomplishing that result. *See LivePerson*, 2017 WL 2311272 at *15. In *LivePerson*, the court found that certain claims passed muster under *Alice* step one because, although they "*involve*[d] the abstract idea of enhancing customer service in an online customer-agent interaction, they are ultimately directed to a specific means or method for achieving that goal: sending a link to a customer who, in turn, uses that link to launch an application, at which point the agent can monitor the customer's progress in real time while the customer is using the application." *Id.* (emphasis in the original). Similarly, Claim 12 of the '903 Patent focuses on aspects of the claimed database architecture and routing methods that address problems associated with prior art computer-based match and route systems. Thus, the specific attributes of the claimed invention—a multi-layered data structure with "semantic to non-semantic" routing techniques—are directed towards a purported improvement to the flexibility and scalability of the system. Contrary to Cisco's characterization, the '903 Patent does not merely call for the use of a generic computer processor to speed up a conventional process such as locating a telephone number in a directory. Rather, the Patent recognizes certain limitations of existing technology and aims to remove those barriers. Nor does the '903 Patent preempt all future computer-based match and route systems. It specifically recognizes such prior art systems and explains how the claimed invention improves upon the existing technology.

Even if Claim 12 were directed at patent-ineligible concepts, it would still survive *Alice*'s "step two" because it contains an inventive concept. As discussed, the '903 Patent proposes a database system that eliminates the need to reconstruct the hardwired, direct inquiry-to-expert connections used in prior systems. This allows the claimed match and route system to be easily adapted to meet the changing needs of an organization, or the different needs of multiple organizations using the same system. *See* '903 Patent at 1:35-39. It describes a specific multi-layered data structure that makes use of routing algorithms that rely upon database relationships between "semantic" humanly-understandable inquiry categories (i.e. words) and "non-semantic," numerical identifiers. By associating inquiry types, types of skills an expert might possess, and the

experts themselves with unique numerical identifiers—as opposed to relying upon fixed connections between the groups of data—the claimed invention allows the database components to be easily modified. Although Cisco raises factual disputes as to whether this process is novel or an improvement over prior art, XU has described a sufficiently inventive database framework to survive a motion for judgment at the pleading stage. For these reasons, Cisco's motion for judgment on the pleadings under 35 U.S.C. § 101 is denied.

## V. CONCLUSION

For the reasons set forth above, XU's motion for partial summary judgment on invalidity collateral estoppel is granted. Cisco's motion for judgment on the pleadings under 35 U.S.C. § 101 is denied.

**IT IS SO ORDERED**.

Dated: May 8, 2018

RICHARD SEEBORG
United States District Judge