K. Lee Marshall (SBN 277092)
Alexandra C. Whitworth (SBN 303046)
BRYAN CAVE LEIGHTON PAISNER LLP
Three Embarcadero Center, 7th Floor
San Francisco, CA  94111-4078
Telephone: (415) 675-3444
Facsimile: (415) 675-3434
klmarshall@bclplaw.com
alex.whitworth@bclplaw.com

J. Bennett Clark (*pro hac vice*)
Daniel A. Crowe (*pro hac vice*)
BRYAN CAVE LEIGHTON PAISNER LLP
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, MO  63102
Telephone: (314) 259-2000
Facsimile: (314) 259-2020
ben.clark@bryancave.com
dacrowe@bryancave.com

Joseph J. Richetti (*pro hac vice*)
Alexander D. Walden (*pro hac vice*)
BRYAN CAVE LEIGHTON PAISNER LLP
1290 Avenue of the Americas
New York, NY  10104
Telephone: (212) 541-2000
Facsimile: (212) 541-4630
alexander.walden@bclplaw.com
joe.richetti@bclplaw.com

*Attorneys for Plaintiff XpertUniverse, Inc.*

# IN THE UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| XPERTUNIVERSE, INC., a Delaware Corporation, | Case No. 17-cv-3848 |
| Plaintiff, | **PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF** |
| v. | |
| CISCO SYSTEMS, INC., A California Corporation | |
| Defendant. | |

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ................................................................................................................. 1

II.  LEGAL STANDARDS ........................................................................................................ 2

    A.   Claim Construction ................................................................................................... 2

    B.   Collateral Estoppel ................................................................................................... 3

III. FACTUAL BACKGROUND .............................................................................................. 4

    A.   The '903 Patent ........................................................................................................ 4

    B.   Claim Construction For The Asserted Claim Was Fully Litigated And Decided In The Delaware Action ................................................................................................ 7

IV.  ARGUMENT ..................................................................................................................... 11

    A.   Collateral Estoppel Bars Cisco From Re-Construing Claim 12 ............................ 11

        1.   The Patent Claim Being Construed Here Is Identical to the Delaware Action 12

        2.   The Delaware Claim Construction Order Constitutes a Final Judgment ......... 16

        3.   There Is No Dispute That the Delaware Action Involved the Same Parties .... 17

    B.   The Delaware Claim Construction Should, At A Minimum, Be Highly Persuasive In Construing Claim 12 ........................................................................................... 17

    C.   The Disputed Claim Terms in Claim 12 of the '903 Patent ................................... 18

        1.   "Database" ........................................................................................................ 18

        2.   "Database Entry" / "Entry" .............................................................................. 21

        3.   "Skill-Set Database" ........................................................................................ 22

        4.   "A unique numeric routing identifier linked to each skill-set database entry and to the associated inquiry type in the inquiry-type database" ........................... 23

        5.   "Identify the expert associated with the predetermined semantically-expressed inquiry type requested by the user by use of the numeric routing identifier" . 24

V.   CONCLUSION .................................................................................................................. 25

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CA  94111-4078

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Biovail Labs. Int'l v. Intelgenx Corp.*,
  No. CIV. 09-605-LPS, 2010 WL 5625746 (D. Del. Dec. 27, 2010)...................................15

*Comark Commc'ns., Inc. v. Harris Corp.*,
  156 F.3d 1182, 1186 (Fed. Cir. 1998) ...........................................................................3

*Digital-Vending Servs. Int'l, LLC v. Univ. of Phoenix, Inc.*,
  672 F.3d 1270 (Fed. Cir. 2012) .....................................................................................25

*Eon Corp. IP Holdings LLC v. Silver Spring Network, Inc.*,
  815 F.3d 1314 (Fed. Cir. 2016) .......................................................................................2

*EON Corp IP Holdings LLC v. Apple Inc.*,
  No. 14-CV-05511-WHO, 2016 WL 5234609 (N.D. Cal. Sept. 22, 2016)........................17

*Famosa, Corp. v. Gaiam, Inc.*,
  No. 11-Civ-05703 (KBF), 2012 WL 865687 (S.D.N.Y. Mar. 14, 2012)...........19, 22, 24, 25

*Finisar Corp. v. DirecTV Grp., Inc.*,
  523 F.3d 1323, 1329 (Fed. Cir. 2008) ..........................................................................3, 17

*Finjan, Inc. v. Symantec Corp.*,
  No. 14-CV-02998-HSG, 2017 WL 550453 (N.D. Cal. Feb. 10, 2017) ..............................17

*Fitzgibbon v. Martin Cty. Coal Corp.*,
  No. CIV.A. 05-36, 2007 WL 1231509 (E.D. Ky. Apr. 25, 2007).....................................12

*Genentech, Inc. v. Trustees of Univ. of Pennsylvania*,
  871 F. Supp. 2d 963 (N.D. Cal. 2012) ...........................................................................16

*GPNE Corp. v. Apple Inc.*,
  108 F. Supp. 3d 839, 848 (N.D. Cal. 2015), *aff'd.* 830 F.3d 1365 (Fed. Cir. 2016)...........13

*GPNE Corp. v. Apple Inc.*,
  830 F.3d 1365 (Fed. Cir. 2016) ....................................................................................2, 18

*Hydranautics v. FilmTec Corp.*,
  204 F.3d 880 (9th Cir. 2000)...........................................................................................4

*Int'l Gamco, Inc. v. Multimedia Games Inc.*,
  732 F. Supp. 2d 1082 (S.D. Cal. 2010) .....................................................................3, 4, 12

*Int'l Test Sols., Inc. v. Mipox Int'l Corp.*,
  No. 16-CV-00791-RS, 2017 WL 1367975 (N.D. Cal. Apr. 10, 2017) .................2, 3, 24, 25

*Laitram Corp. v. NEC Corp.*,
  163 F.3d 1342 (Fed. Cir. 1998) ......................................................................................3

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CA  94111-4078

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CA 94111-4078

*Lazare Kaplan Int'l, Inc. v. Photoscribe Techs., Inc.,*
   628 F.3d 1359 (Fed. Cir. 2010) ...................................................................................13

*Lighting Ballast Control LLC v. Philips Elecs. N. Am. Corp.,*
   790 F.3d 1329 (Fed. Cir. 2015) ...................................................................................13

*Markman v. Westview Instruments, Inc.,*
   517 U.S. 370 (1996) .......................................................................................................2

*Markman v. Westview Instruments, Inc.,*
   52 F.3d 967 (Fed. Cir. 1995) ..........................................................................................3

*Montana v. United States,*
   440 U.S. 147 (1979) .......................................................................................................4

*In re Montgomery,*
   677 F.3d 1375 (Fed. Cir. 2012) ....................................................................................16

*Neev v. Alcon Labs., Inc.,*
   No. SACV 15-00336 JVS(JCGx), 2016 WL 9051170 (C.D. Cal. Dec. 22, 2016) ...........3, 4

*Nestle USA, Inc. v. Steuben Foods, Inc.,*
   884 F.3d 1350 (Fed. Cir. 2018) ..................................................................................1, 15

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.,*
   521 F.3d 1351, 1362 (Fed. Cir. 2008) ........................................................................2, 18

*Phil-Insul Corp. v. Airlite Plastics Co.,*
   854 F.3d 1344 (Fed. Cir. 2017) ............................................................................1, 4, 13, 14, 17

*Phillips v. AWH Corp.,*
   415 F.3d 1303 (Fed. Cir. 2005) ..............................................................................2, 3, 21

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.,*
   442 F.3d 741 (9th Cir. 2006) ..........................................................................................4

*Roche Palo Alto LLC v. Apotex, Inc.,*
   526 F. Supp. 2d 985 (N.D. Cal. 2007), *aff'd.* 531 F.3d 1372 (Fed. Cir. 2008) ..........4, 19, 22

*Thorner v. Sony Computer Entertainment America LLC,*
   669 F.3d 1362 (Fed. Cir. 2012) .......................................................................20, 22, 23, 25

*UCP Int'l Co. Ltd. v. Balsam Brands Inc.,*
   No. 16-CV-07255-WHO, 2017 WL 5068568 (N.D. Cal. Nov. 3, 2017) .........3, 4, 12, 16, 17

*U.S. Surgical Corp. v. Ethicon, Inc.,*
   103 F.3d 1554 (Fed. Cir. 1997) ....................................................................................16

PLAINTIFF'S OPENING CLAIM CONSTRUCTIONS BRIEF
CASE NO. 17-CV-3848

1    Pursuant to the Court Order, dated April 20, 2018 (Dkt. 96), Plaintiff XpertUniverse, Inc.

2  ("XU") respectfully submits its Opening Claim Construction Brief in connection with claim 12

3  (the "Asserted Claim") of U.S. Patent Nos. 7,499,903 (the "'903 Patent").

4  **I.    INTRODUCTION**

5    In the Delaware Action,[1] the jury determined that claim 12 of XU's '903 Patent was not

6  invalid and that Cisco's accused products, including Remote Expert, infringed that patent claim.

7  The jury's verdict was based on Judge Andrews' Markman ruling regarding the proper

8  construction of claim 12.  Indeed, it is axiomatic that defining the scope and meaning of a patent

9  claim is a necessary and crucial prerequisite to determining patent infringement and validity.

10 Despite having fully litigated those issues in the Delaware Action, Cisco now asks the Court to re-

11 construe claim 12 in an attempt to evade a second infringement verdict.  It is well settled that this

12 is improper.  *See, e.g.*, *Nestle USA, Inc. v. Steuben Foods, Inc.*, 884 F.3d 1350 (Fed. Cir. 2018);

13 *Phil-Insul Corp. v. Airlite Plastics Co.*, 854 F.3d 1344, 1358 (Fed. Cir. 2017).[2]

14    The parties engaged in an extensive claim construction process in the Delaware Action that

15 lasted several months, involved hundreds of pages of briefing and supporting evidence, and

16 culminated in a Markman hearing on March 15, 2012 and a Claim Construction Order from the

17 Delaware court on April 20, 2012. Significantly, that Markman order addressed the same exact

18 claim – claim 12 of the '903 Patent.  Indeed, the prior Markman order addressed ***nine*** claim terms

19 in claim 12 alone.  Nevertheless, Cisco argues that this Court should only adopt some of those

20 constructions from the Delaware Action, and asks this Court to adopt new constructions for other

21 terms and phrases in claim 12.[3]  Cisco even proposes new constructions for identical claim terms

22

23 [1] (*See* Dkt. 58-2, Exh. A, referred to herein as the "Delaware Action.")

24 [2] Cisco recently asked the Court for a do-over in the context of challenging the validity of the '903
25 Patent.  This Court correctly denied Cisco's request and held that the doctrine of collateral
   estoppel bars Cisco from rearguing validity a second time.  (*See* Dkt. 105 at p. 2.)

26 [3] (Dkt. 71-1 at pp. 2-9, "Joint Disputed Claim Terms Chart.")  The parties have also agreed to
27 constructions for certain other terms and phrases in the asserted claims.  *Id*. at p. 1.  Accordingly,
   XU requests that the Court also adopt these jointly proposed claim constructions.
28

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CA  94111-4078

that were already addressed by the Delaware court.  This is clearly improper.  Cisco cannot cherry pick certain constructions that it favored, whilst asking this Court to redo the constructions it was displeased with in the Delaware Action.

Additionally, in this case, Cisco has admitted that its new proposed constructions have no bearing on the scope or meaning of claim 12; but, rather, are merely intended to "help the jury" by clarifying certain claim language.  (*See* Dkt. 60 at p. 4).  It is well settled, however, that claim construction is needed only "[w]hen the parties present a fundamental dispute regarding the scope of a claim term."  *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008); *see also GPNE Corp. v. Apple Inc.*, 830 F.3d 1365, 1372–73 (Fed. Cir. 2016) ("Where a district court has resolved the questions about claim scope that were raised by the parties, it is under no obligation to address other potential ambiguities that have no bearing on the operative scope of the claim").  Thus, for at least these reasons, XU respectfully requests that the Court reject Cisco's attempt to re-construe claim 12 and adopt the Delaware Claim Construction Order.

To the extent the Court believes that claim construction is appropriate in this case, it is readily apparent that XU's constructions "stay[] true to the claim language and most naturally align[] with the patent's description of the invention [and, therefore,] will be, in the end, the correct construction."  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1316 (Fed. Cir. 2005) (*en banc*).  In contrast, Cisco's proposed constructions: (i) read-in additional limitations that appear nowhere in the claims or, even, the specification; (ii) ignore express claim language; and (iii) do nothing to clarify the meaning of claim 12.  Such constructions are clearly improper.  Accordingly, in the alternative, XU requests that the Court adopt its proposed constructions for each such claim term.

## II.   LEGAL STANDARDS

### A.   Claim Construction

As this Court recently explained, "[c]laim construction is a question of law to be determined by the courts."  *Int'l Test Sols., Inc. v. Mipox Int'l Corp.*, No. 16-CV-00791-RS, 2017 WL 1367975, at *2 (N.D. Cal. Apr. 10, 2017) (J. Seeborg) (citing *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996)).  A district court's duty is to construe those terms that are in controversy and resolve disputes about claim scope. *Eon Corp. IP Holdings LLC v. Silver*

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CA  94111–4078

1    *Spring Network, Inc.* 815 F.3d 1314, 1319 (Fed. Cir. 2016).

2        "A disputed claim term should be construed in a manner consistent with its 'ordinary and

3    customary meaning,' which is 'the meaning that the term would have to a person of ordinary skill

4    in the art in question at the time of the invention, i.e., as of the effective filing date of the patent

5    application.'" *Mipox*, 2017 WL 1367975, at *2 (quoting *Phillips*, 415 F.3d at 1312–13).  "The

6    ordinary and customary meaning of a claim term may be determined solely by viewing the term

7    within the context of the claim's overall language."  *Mipox*, 2017 WL 1367975, at *2

8        Claims must be "construed in a manner consistent with the patent's specification." *Mipox*,

9    2017 WL 1367975, at *2 (citing *Markman*, 52 F.3d at 979).  It is well settled, however, that

10   "construction imposing limitations not found in the claims or supported by an unambiguous

11   restriction in the specification or prosecution history" is not permitted." *Id.*; *see also Laitram*

12   *Corp. v. NEC Corp.*, 163 F.3d 1342, 1347 (Fed. Cir. 1998) ("[A] court may not import limitations

13   from the written description into the claims."); *Comark Commc'ns., Inc. v. Harris Corp.*, 156 F.3d

14   1182, 1186 (Fed. Cir. 1998) ("[W]hile ... claims are to be interpreted in light of the specification, it

15   does not follow that limitations from the specification may be read into the claims.").

16       "Courts may also consider extrinsic evidence, such as expert testimony, dictionaries, or

17   technical treatises, especially if such sources are 'helpful in determining the true meaning of

18   language used in the patent claims.'"  *Mipox*, 2017 WL 1367975, at *3 (citing *Phillips*, 415 F.3d

19   at 1318).  "Ultimately, while extrinsic evidence may aid the claim construction analysis, it cannot

20   be used to contradict the plain and ordinary meaning of a claim term as defined within the intrinsic

21   record."  *Id.*; *see also Finisar Corp. v. DirecTV Grp., Inc.*, 523 F.3d 1323, 1328 (Fed. Cir. 2008).

22       **B.      Collateral Estoppel**

23       It is well settled that "[c]ollateral estoppel may apply to claim construction

24   determinations." *Int'l Gamco, Inc. v. Multimedia Games Inc.*, 732 F. Supp. 2d 1082, 1090 (S.D.

25   Cal. 2010); *see also UCP Int'l Co. Ltd. v. Balsam Brands Inc.*, No. 16-CV-07255-WHO, 2017 WL

26   5068568 (N.D. Cal. Nov. 3, 2017); *Neev v. Alcon Labs., Inc.*, No. SACV 15-00336 JVS(JCGx),

27   2016 WL 9051170 (C.D. Cal. Dec. 22, 2016).  Indeed, in the wake of *Markman*, courts have

28   acknowledged the importance in "the promotion of uniformity in construing a patent claim and

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CA  94111-4078

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CA  94111-4078

1  that 'it is inconceivable that a fully-litigated determination after a first *Markman* hearing would

2  not be preclusive in subsequent actions involving the same disputed claims under the same

3  patent.'" *Int'l Gamco*, 732 F. Supp. 2d at 1092 (citations omitted).

4         "[F]or claim construction, district courts in this circuit have consistently applied the []

5  standard articulated in *Hydranautics v. FilmTec Corp.*, 204 F.3d 880, 885 (9th Cir. 2000)."  *Neev*,

6  2016 WL 9051170, at *11 (citations omitted); *see also UCP*, 2017 WL 5068568, at *3 (citing

7  *Hydranautics* in applying collateral estoppel to a prior claim construction).  Under Ninth Circuit

8  law, collateral estoppel applies to a prior claim construction if: (1) the issue necessarily decided at

9  the previous proceeding is identical to the one which is sought to be relitigated; (2) the first

10  proceeding ended with a final judgment on the merits; and (3) the party against whom collateral

11  estoppel is asserted was a party or in privity with a party in the first proceeding. *See, e.g.*, *UCP*,

12  2017 WL 5068568, at *3; *Int'l Gamco*, 732 F. Supp. 2d 1082 at 1090; *accord Roche Palo Alto*

13  *LLC v. Apotex, Inc.*, 526 F. Supp. 2d 985, 994 (N.D. Cal. 2007) (citing *Reyn's Pasta Bella, LLC v.*

14  *Visa USA, Inc.*, 442 F.3d 741, 746 (9th Cir. 2006)).[4]

15         The application of collateral estoppel to prior claim construction determinations protects

16  "adversaries from the expense and vexation attending multiple lawsuits, conserves judicial

17  resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent

18  decisions."  *Montana v. United States*, 440 U.S. 147, 153-54 (1979).

19  **III.    FACTUAL BACKGROUND**

20       **A.    The '903 Patent**

21         As this Court correctly found, "[t]he '903 Patent generally relates to an expert location

22  system that facilitates real-time connections between customers with specific inquiries and live

23  experts who can respond."  (Dkt. 105 at p. 11; *see also* Dkt. 54-1, '903 Patent at 2:28-32)

24  ("semantic to non-semantic routing of inquiry requests received from a user to an expert having

25  individualized knowledge of at least some portion of the inquiry topic.").

---

[4] In patent cases, general principles of collateral estoppel are governed by the circuit in which the
district court sits. *See, e.g.*, *Phil-Insul Corp.*, 854 F.3d at 1353.  Federal Circuit law applies to
"aspects of the collateral estoppel analysis that are particular to patent law." *Id.*

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7ᵀᴴ FLOOR
SAN FRANCISCO, CA 94111-4078

The '903 Patent specification explains that, at the time of the patent, computer-based match-and-route systems existed that tried to connect individuals who have inquiries with experts who can provide the appropriate knowledge.  These computer-based match-and-route systems, however, suffered from several drawbacks and limitations.  ('903 Patent at 1:11-46.)  The invention described and claimed in the '903 Patent addresses these problems in the prior art through a new and improved expert location system that uses a novel multi-layered data structure to store the relationships between inquiries and experts' skills, quickly locate knowledgeable experts, and connect them in real-time with "seekers" (*i.e.*, individuals with inquiries). (*Id.* at 1:50-2:9, FIGS. 2-3; *see also* Dkt. 105 at pp. 14-15 (noting that the '903 "Patent recognizes certain limitations of existing technology and aims to remove those barriers.")) For example, the claimed invention eliminated the need for fixed, hard-wired connections between inquiries and experts, substantially reduced the time and effort required to update, reorganize and expand these relationships, and allowed for multiple, different representations of the inquiry user interface to be created quickly and efficiently.  ('903 Patent at 1:11-46; *see also* Dkt. 105 at pp. 14-15.)  This significantly increased the configurability, flexibility, and scalability of the expert location system and represented a major technological improvement over the prior art computer-based match-and-route systems.  ('903 Patent at 1:11-46.)

Among other things, the '903 Patent removed these barriers and problems in the prior art through a novel, multi-layered data structure and "semantic to non-semantic" routing techniques. The techniques described in the '903 Patent facilitate semantic to non-semantic routing by relying on database relationships and associations between "semantic" humanly-understandable inquiry categories and "non-semantic" numerical identifiers.  These "semantic routing criteria" are stored in the database as humanly-understandable descriptors of inquiries and are "organized into predetermined groups that identify an inquiry types."  (*Id.* at 4:42-52.)  As one example, these criteria can be "setup in accordance [each] organization's preferences."  (*Id.*)

Figure 2 of the '903 Patent shows one exemplary layer of semantic routing criteria 200 that is stored in a database 20.  (*Id.* at 2:20, FIG. 2.)  As shown and described in connection with figure 2, the system presents a user seeking assistance on a topic with a selection of underlying criteria

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CA 94111-4078

that are humanly understandable descriptors (semantic identifiers). (*Id.* at 2:33-35.)  The routing criteria are presented to users as criterion selections that a seeker selects before the system can locate an expert, such as on a "Get Assistance Page" 220.  (*Id.* at 4:42-48.)  The presentation of criterion selection is flexible and configurable. (*Id.* at 4:48-5:16.) Specifically, criterion selections can have a hierarchal relationship, can be independent, or can have a combination of hierarchal and independent relationships. (*Id.* at 5:1-16.)

After a user selects certain of the criteria, the system identifies an "inquiry type," which the '903 Patent explains is a specific grouping of underlying criteria predetermined by the organization. (*Id.* at 5:4-16.)  After "the seeker responds to several iterations of semantic identifier presentations, the system is able to select a predetermined semantically-expressed inquiry type that is organized from the underlying criteria grouping selected by the seeker." (*Id.* at 2:36-40.)

The inquiry types that are organized from the underlying criteria and available for selection by the user are stored in an "inquiry-type database" as a "first layer of inquiry types." (*Id.* at 5:34-39.) Additional layers of criterion selection may be included in the database.  These "additional layers are related to the first layer by having a one-to-one correspondence with the inquiry types." (*Id.* at 5:17-21.)  As explained in the specification, these "additional layers of criterion selections are different semantic presentations of the first layer." (*Id.* at 5:26-28.) For example, the additional "layers can be in different languages, or can be composed in jargon." (*Id.* at 5:28-33.) According to the '903 Patent, layers can be flexibly selected for presentation based on "a user profile or an organization profile." (*Id.* at 5:22-26.) The '903 Patent further explains an "inquiry- type database" may be populated to with one or more "layer[s] of inquiry-types." (*Id.* at 5:34-45.)

A second type of database architecture described in the '903 Patent is the "skill-set" database. In certain embodiments, "a skill-set database includes entries that associate one or more experts with one or more of the inquiry types and its corresponding layers." (*Id.* at 1:58-60.) According to the '903 Patent, this mapping between expert and inquiry types is accomplished by "associating the skill-set entry and the inquiry type to a unique numerical routing identifier." (*Id.* at 5:49-53.) Specifically, "[w]hen a user (seeker) requests assistance with a particular inquiry type, step 350, the expert(s) associated with the skill-set entry mapped to the inquiry type by the

6

1   numerical routing identifier are located and identified." (*Id*. at 5:53-57.)

2   Importantly, this novel, multi-layered database structure and semantic to non-semantic

3   routing algorithm creates a degree of separation between the categories of questions a user might

4   ask, the types of skills that experts possess, and the experts themselves. As such, unlike the prior

5   art computer-based match and route systems, the invention enables these inquiry types, skills, and

6   experts to be added or removed from the system with minimal effort and little, or no, impact on

7   the remainder of the database structure. The invention thus obviates the need to re-wire many or

8   all of the database connections, avoiding the difficult and labor intensive processes required to

9   build or modify the "hard-wired" direct database connections between inquiry types and experts.

10  **B.  Claim Construction For The Asserted Claim Was Fully Litigated And Decided**

11  **In The Delaware Action**

12  In 2009, XU brought suit against Cisco in the United States District Court for the District

13  of Delaware for, *inter alia*, infringing claim 12 of the '903 Patent. (Dkt. 58-2, Exh. A.) The

14  parties litigated that case over a period of more than four years, after which the jury determined

15  that Cisco had not proven that XU's '903 Patent was invalid and that Cisco's Remote Expert and

16  Expert Advisor products infringed claim 12. (Dkt. 58-2, Exh. G.) The jury's findings were based

17  on the Delaware court's Markman ruling. (RJN, Exh. A.) In turn, the patent-related aspects of the

18  jury's verdict were upheld by the Delaware court's post-trial ruling, and Cisco ultimately chose

19  not to pursue an appeal of those decisions. (Dkt. 58-2, Exhs. I & J; Dkt. 68-1, Exhs. 11 & 12.)

20  During the Delaware Action, the parties engaged in the claim construction process for

21  more than four months. Following the initial claim construction disclosures and discussions (*e.g.*,

22  exchanging proposed terms and constructions and supporting evidence), the parties submitted a

23  Joint Claim Construction Statement to the Delaware court, on January 27, 2012, addressing their

24  respective claim construction positions regarding the '903 patent. (RJN, Exh. B.) The parties

25  agreed upon constructions for three claim terms and phrases:

26

27

28

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CA 94111-4078

| Claim Term | Agreed Construction |
|---|---|
| "computer database"[5] | "records organized in computer readable/writeable memory" |
| "predetermined semantically expressed inquiry types" | "terms that organize and identify categories of assistance requested, created prior to use and expressed using language that is humanly understandable" |
| "having a one-to-one correspondence"[6] | "satisfying the property that each member of each of the one or more layers of inquiry types maps exactly to a predetermined semantically expressed inquiry type" |

(*Id.* at p. 6.)  Cisco asserted that 12 other claim terms in the '903 Patent required construction and proposed constructions for each term.  (*Id.* at pp. 7-11.)  In contrast, XU submitted that all of these additional claim terms and phrases identified by Cisco would be readily understood by one of ordinary skill in the art, and, therefore, no specific construction was necessary.  XU also provided alternate proposed constructions for those additional terms, in the event that the Delaware court determined that that a specific construction was needed.  (*Id.*)

In particular, with respect to claim 12 of the '903 Patent, the parties identified the following eight claim terms and phrases as being in dispute:

1) "underlying plurality of criteria groupings"

2) "skill-set database"

3) "unique numeric routing identifier"

4) "match and route system"

5) "layer(s) of inquiry type(s)"

6) "inquiry type(s)"

7) "upon the receipt of a user request for assistance with at least one of the predetermined semantically-expressed inquiry type"

---

[5] The term "computer database" appears in claim 1. ('903 Patent at 6:44-49.)

[6] The phrase "having a one-to-one correspondence" appears in claims 1 and 19 of the '903 Patent. ('903 Patent at 6:49-53 & 8:42-46.)

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CA  94111-4078

8)    "the host server communicably connected with an inquiry-type database
and a skill-set database"

The parties exchanged claim construction briefs, as well as expert declarations and evidence in support thereof on February 15, 2012, February 29, 2012, and March 7, 2012. (RJN, Exhs. C-E.) On March 15, 2012, the Delaware court held a Markman hearing and issued its Claim Construction Order on April 20, 2012. (RJN, Exhs. F, G.) The Delaware court first addressed the three agreed-upon claim terms, adopting the parties' proposed constructions for "predetermined semantically expressed inquiry types" and "having a one-to-one correspondence." (RJN, Exh. G at p. 1.) The court rejected the parties' construction of "computer database," however, holding that it did not need to be construed. (*Id.* at pp. 1-2.) Similarly, with respect to six of the eight disputed claim terms and phrases in claim 12, the Delaware court agreed with XU, holding that no specific construction was needed. (*Id.* at pp. 2-5 & 7-8.) The court arrived at its own construction for the other two disputed claim terms – "inquiry type" and "layer(s) of inquiry type(s)" – both of which were consistent with XU's alternate proposed constructions. (*Id.* at pp. 4-5.)

The following chart sets forth the Delaware court's constructions for the eight disputed terms from claim 12, along with a summary of the court's rationale for its constructions:

| Claim Term | Court's Construction | Rationale |
|---|---|---|
| "underlying plurality of criteria groupings" | No construction of "underlying criteria grouping(s)" is necessary. "Underlying plurality of criteria groupings" is construed to mean "two or more groups of underlying criteria." | The court's construction is in accordance with its plain and ordinary meaning. Further, the parties' additional proposed limitations do not aid the court or the jury in understanding the term as it is used in the claimed invention, and repeat limitations already present in the claims. |
| "skill-set database" | No construction necessary. | Neither proposed construction clarified the original term and that the intrinsic evidence offered no support for the |

Bryan Cave Leighton Paisner LLP
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111-4078

9

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CA 94111-4078

| Claim Term | Court's Construction | Rationale |
|---|---|---|
| | | knowledge being "unique." |
| "unique numeric routing identifier" | No construction necessary. | Neither proposed construction clarifies the original term, and that it is readily understandable via the example of a phone number being a unique number used to route a telephone call to a particular person. |
| "match and route system" | No construction necessary. | The term "match and route system" is a part of the preamble that is of no significance to claim construction. |
| "layer(s) of inquiry type(s)" | "a defined set of predetermined semantically expressed inquiry types" | The term "inquiry type" is used as a shorthand term having antecedent basis in "predetermined semantically expressed inquiry types," for which the parties agreed upon a construction. The noun "inquiry type" refers to an earlier term - "predetermined semantically expressed inquiry type" - and the two terms are used interchangeably throughout the claims. Accordingly, the Court held that there is no need to inject further language and potential confusion into the claims, and that the claims and context make clear that "inquiry type" refers to "predetermined semantically expressed inquiry type." |

| Claim Term | Court's Construction | Rationale |
|---|---|---|
| "inquiry type(s)" | "term(s) that organize and identify categories of assistance requested, created prior to use and expressed using language that is humanly understandable" | As explained above, the term "inquiry type(s)" is used as a shorthand term having antecedent basis in "predetermined semantically expressed inquiry type(s)," which the parties agreed means "term(s) that organize and identify categories of assistance requested, created prior to use and expressed using language that is humanly understandable." |
| "upon the receipt of a user request for assistance with at least one of the predetermined semantically-expressed inquiry type" | No construction necessary. | The parties agreed upon a construction for "predetermined semantically-expressed inquiry type." No further construction of this term is required. |
| "the host server communicably connected with an inquiry-type database and a skill-set database" | No construction necessary. | The term "communicably connected" does not need to be construed. |

(RJN, Exh. G at pp. 2-5 & 7-8.)

IV.   **ARGUMENT**

A.   **Collateral Estoppel Bars Cisco From Re-Construing Claim 12**

Cisco fully litigated the construction of claim 12 of the '903 Patent in the Delaware

Bryan Cave Leighton Paisner LLP
Three Embarcadero Center, 7ᵗʰ Floor
San Francisco, CA 94111-4078

11

Action, including: (i) exchanging in claim construction disclosures and discovery; (ii) submitting claim construction briefs, expert declarations, and evidence; and (iii) presenting arguments at a Markman hearing.  (RJN, Exhs. B-E.)  In so doing, Cisco argued the constructions for eight claim terms that appear in claim 12 of the '903 patent.  (*Id.*) Presumably unhappy with the outcome of that claim construction process (given that it was found to infringe), Cisco now asks for a do-over in this case in an apparent effort to manufacture non-infringement positions, where none exist.

In particular, Cisco asks this Court to re-construe three claim terms – "database," "database entry," and "skill-set database" – each of which was already construed, in whole or in part, by the Delaware court.  (Dkt. 71-1 at pp. 2-6.)  This is plainly improper.  Similarly, Cisco asks this Court to construe two phrases representing most of the language in the final two limitations of claim 12. (*Id.* at pp. 6-9.)  Significantly, these limitations consist almost exclusively of terms and phrases that were either construed by the Delaware court or have been agreed-to by the parties.  Thus, Cisco's request is nothing more than a blatant attempt to re-construe the previously decided claim terms by proposing new constructions for the larger phrases as a whole.  This too is improper.

It is well settled under Ninth Circuit law that collateral estoppel bars a party from re-litigating a prior claim construction decision if: (1) the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated; (2) the first proceeding ended with a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party in the first proceeding. *See*, *e.g.*, *UCP*, 2017 WL 5068568, at *3; *Int'l Gamco*, 732 F. Supp. 2d at 1090.  Here, it is clear that all three elements are met, and, therefore, Cisco is precluded from re-litigating the Delaware court's Markman ruling.

### 1.   The Patent Claim Being Construed Here Is Identical to the Delaware Action

Where the same claim was construed in the previous proceeding, the first element of collateral estoppel is satisfied. *See*, *e.g.*, *UCP*, 2017 WL 5068568, at *3 ("The same issues of claim construction in the Frontgate Order are clearly present in this case. In the Frontgate Order, I construed Balsam's '718 and '077 patent claims as a matter of law and expressly defined the key terms, and the same patent claims are at issue here."); *Fitzgibbon v. Martin Cty. Coal Corp.*, No. CIV.A. 05-36, 2007 WL 1231509, at *4 (E.D. Ky. Apr. 25, 2007) (rejecting the defendants'

12

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CA  94111-4078

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CA 94111-4078

arguments that collateral estoppel should not apply in this case because a previous Markman ruling did not interpret four additional terms at issue in the current litigation); *see also Phil-Insul Corp.*, 854 F.3d at 1358.

Here, there is no dispute that the same claim – claim 12 of the '903 Patent – was construed in the Delaware Action.  Indeed, Cisco even agrees that this Court should adopt at least some of the constructions from the Delaware court's Claim Construction Order.  (*See* Walden Declaration, Exh. A at p. 1.)  Nor can Cisco dispute that it had a full and fair opportunity to litigate the construction of claim 12 in the Delaware Action.  During that case, Cisco fought extensively over the constructions of *eight* different claim terms and phrases in claim 12 alone.  Importantly, nothing in this case creates any new issues, evidence, or arguments that are materially different from or that were unavailable during the Delaware Action so as to justify disturbing the Delaware court's Markman ruling for claim 12.  In fact, XU contends that the doctrine of res judicata should apply because the accused products in this case have no colorable differences from those that the jury found to infringe in the Delaware Action.

Moreover, the Delaware court already addressed Cisco's claim construction arguments and positions regarding claim 12 and held that certain terms (including terms being re-raised by Cisco here) do not require any construction because their meaning is readily ascertainable. (RJN, Exh. G at pp. 2-5 & 7-8.)  Cisco cannot now cherry-pick certain of the Delaware court's claim constructions it wishes to adopt and then ask this Court to re-construe other terms simply because it did not like the Delaware court's rulings on those terms.  Doing so would be particularly egregious here, given that the jury relied on the Delaware court's Claim Construction Order to find that Cisco's Remote Expert products infringed claim 12.  Thus, Cisco should not be permitted to redefine the scope of claim 12 – with the benefit of hindsight from the prior verdict – in a flagrant effort to elude infringement by substantially the same accused products at issue in this second case. *See Lighting Ballast Control LLC v. Philips Elecs. N. Am. Corp.*, 790 F.3d 1329, 1341 (Fed. Cir. 2015) ("ULT waived its right to seek a new claim construction because ULT did not seek that construction until after trial"); *see also GPNE Corp. v. Apple Inc.,* 108 F. Supp. 3d 839, 848 (N.D. Cal. 2015), *aff'd*, 830 F.3d 1365 (Fed. Cir. 2016); *Lazare Kaplan Int'l, Inc. v. Photoscribe Techs.,*

*Inc.,* 628 F.3d 1359, 1376 (Fed. Cir. 2010).

The five claim terms and phrases that Cisco is asking this Court to revisit fall within three general categories, namely, terms that are: (i) identical to; (ii) a variation of; or (iii) an agglomeration of claim terms that were already construed in the Delaware Action. The fact that Cisco is not even asking the Court to construe any "new" claim terms or phrases further highlights why collateral estoppel should apply here.

### Identical Claim Terms

Cisco is asking this Court to construe the claim term "skill-set database." (Dkt. 71-1 at pp. 4-5.) This exact claim term was disputed by the parties in the Delaware Action and addressed by the Delaware court's Claim Construction Order. (RJN, Ex. G at p. 2.) In particular, the Delaware court rejected Cisco's proposed construction and held that this claim term does not need a specific construction because the plain and ordinary meaning of this term is clear on its face. *Id.* Curiously, Cisco not only seeks to re-construe this same claim term, but now proposes an entirely new construction for the term. (Dkt. 71-1 at pp. 4-5.) This is plainly improper. *See Phil-Insul Corp.*, 854 F.3d at 1358 ("Because the record reveals that IntegraSpec had a full and fair opportunity to litigate the meaning of the terms "adjacent" and "dimension"—the same terms at issue here—it is bound by those constructions.").

### Claim Term Variations

Cisco also asks this Court to construe the claim terms "database" and "database entry."[7] (Dkt. 71-1 at pp. 2-5.) Both of these claim terms, however, are merely variations and/or truncations of other claim terms that were litigated by the parties and addressed by the Delaware court. Specifically, the Delaware court considered the claim terms "computer database"[8] and "skill-set database," and held that neither term required a specific construction. (RJN, Exh. G at

---

[7] As explained below (*infra* at 21-22) Cisco asserts that the term "database entry" should only be construed in the event that the Court does not construe the term "database." (Dkt. 71-1 at pp. 3-4.) Given that the Delaware court already construed the terms "computer database" and "skill-set database," XU agrees with Cisco that there is no need to also construe "database entry."

[8] The term "computer database" is used interchangeably with the term "database" in claim 1. ('903 Patent at 6:44-49.)

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CA  94111-4078

1  pp. 1-2.)  Courts have made clear that collateral estoppel applies to variations of claim terms

2  construed in a previous proceeding.  *See*, *e.g.*, *Nestle USA,* 884 F.3d at 1350 (applying collateral

3  estoppel to construction of "aseptic" and its related variation "aseptically disinfecting"); *Biovail*

4  *Labs. Int'l v. Intelgenx Corp.*, No. CIV. 09-605-LPS, 2010 WL 5625746, at *4 (D. Del. Dec. 27,

5  2010) ("Biovail's proposal that this Court construe not "free of stabilizer" but, instead, just

6  "stabilizer," appears to be an attempt to evade application of the collateral estoppel effect of

7  Anchen's construction of "free of stabilizer.").  In other words, for the purposes of collateral

8  estoppel, these "database" claim terms are identical to terms that were already construed.  In fact,

9  the term "database" only appears in claim 12 as part of the larger terms "skill-set database" and

10  "inquiry-type database."  Thus, Cisco should not be permitted to evade the prior Markman

11  decision by asking this Court to construe variations of this same term.

12  *Larger Claim Phrases*

13  Additionally, Cisco is asking this Court to construe the claim limitations "a unique

14  numeric routing identifier linked to each skill-set database entry and to the associated inquiry type

15  in the inquiry-type database," and "identify the expert associated with the predetermined

16  semantically-expressed inquiry type requested by the user by use of the numeric routing

17  identifier."  (Dkt. 71-1 at pp. 6-9.)  Both limitations are simply a combination of individual claim

18  terms and phrases that were already litigated and addressed in the Delaware Action.  For example,

19  the terms "unique numeric routing identifier," "skill-set database," "inquiry type," "computer

20  database," "predetermined semantically-expressed inquiry type," and "numeric routing identifier,"

21  were all addressed by the Delaware court's Claim Construction Order.  The only remaining

22  "terms" in these two limitations are the words "linked," "associated," "identify," "expert,"

23  "requested," and "user," each of which is clear on its face and requires no construction.  Thus, like

24  with the claim term variations above, Cisco should not be permitted to circumvent the prior claim

25  construction decision under the guise of asking this Court to construe the previously-construed

26  claim terms together as part of larger phrases.

27  Lastly, there can be no dispute that the construction of claim 12 was an issue that was

28  "necessarily" decided in the Delaware Action.  Indeed, it is axiomatic that claim construction is a

Bryan Cave Leighton Paisner LLP
Three Embarcadero Center, 7th Floor
San Francisco, CA  94111-4078

15

1   necessary and critical component for determining patent infringement, as well as patent validity.

2   *See, e.g.*, *Genentech, Inc. v. Trustees of Univ. of Pennsylvania*, 871 F. Supp. 2d 963, 970 (N.D.

3   Cal. 2012) ("Determination of patent infringement involves a two-step process [of which] [c]laim

4   construction is the first step, wherein the court resolves any disputes regarding the meaning and

5   scope of the claim terms, 'and when necessary [explains] what the patentee covered by the claims,

6   for use in the determination of infringement.'") (quoting *U.S. Surgical Corp. v. Ethicon, Inc.,* 103

7   F.3d 1554, 1568 (Fed. Cir. 1997)); *see also In re Montgomery*, 677 F.3d 1375, 1379 (Fed. Cir.

8   2012) ("Determining whether claims are anticipated involves a two-step analysis [of which] [t]he

9   first step involves construction of the claims of the patent at issue.").

10       Accordingly, because the issue necessarily decided in the previous proceeding – the proper

11   construction of claim 12 – is identical to the one sought to be re-litigated by Cisco here, the first

12   element of collateral estoppel is satisfied.

### 2.   The Delaware Claim Construction Order Constitutes a Final Judgment

14       A Markman order is final for the purposes of claim construction if it is "sufficiently firm."

15   *UCP*, 2017 WL 5068568, at *3.   "Several factors aid in determining whether a decision is

16   'sufficiently firm': (1) whether the decision was not avowedly tentative; (2) whether the parties

17   were fully heard; (3) whether the court supported its decision with a reasoned opinion; and (4)

18   whether the decision was subject to an appeal or in fact reviewed on appeal."   *Id.*   In *UCP*, the

19   court found the previous Markman order was sufficiently firm because a Markman hearing was

20   conducted giving the defendant the opportunity to fully litigate the issues, and the claim

21   construction decision was supported by a reasoned opinion.   *Id.* at *4.   In addition, the *UCP* court

22   explained that the fact that the order could not be appealed was not sufficient to counterbalance the

23   factors that weighed in favor of collateral estoppel.   *Id.*

24       Like in *UCP*, both parties in the Delaware Action submitted claim construction

25   disclosures, evidence, briefs, and declarations, and participated in a Markman hearing, thereby

26   giving Cisco more than ample opportunity to fully litigate the issue of claim construction for claim

27   12 of the '903 Patent.   Thereafter, the Delaware court rendered its Claim Construction Order

28   setting forth its holdings for the nine agreed-to and disputed claim terms in claim 12, along with

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CA 94111-4078

16

1  separate rationales for each such term.  Moreover, unlike in *UCP*, Cisco had the opportunity to

2  appeal the patent infringement and invalidity verdict, including claim construction, and, although

3  it initially filed a Notice of Appeal, it ultimately chose not to pursue its appeal.  (Dkt. 68-1, Exhs.

4  11 & 12); *c.f. Phil-Insul Corp.*, 854 F.3d at 1357 (finding collateral estoppel applied to previous

5  claim construction, and explaining that "[a]n issue that falls within the scope of the judgment

6  appealed from but is not raised by the appellant in its opening brief on appeal is necessarily

7  waived . . . [is] deemed incorporated within the mandate and thus [is] precluded from further

8  adjudication.").  Accordingly, the Delaware Claim Construction Order constitutes a final judgment

9  on the merits with respect to the construction of claim 12.

10         **3.   There Is No Dispute That the Delaware Action Involved the Same Parties**

11         Both Cisco and XU were parties to the Delaware Action, and, therefore, the third element

12  of collateral estoppel is met.  *See UCP*, 2017 WL 5068568, at *3.

13         Accordingly, Cisco should be estopped from re-litigating the construction of claim 12 of

14  the '903 Patent, and the Claim Construction Order from the Delaware Action should be adopted.

15  **B.   <u>The Delaware Claim Construction Should, At A Minimum, Be Highly</u>**

16       **<u>Persuasive In Construing Claim 12</u>**

17         Even if collateral estoppel did not apply, courts have routinely found claim constructions

18  from prior proceedings to be highly persuasive.  *See, e.g.*, *EON Corp IP Holdings LLC v. Apple*

19  *Inc.,* No. 14-CV-05511-WHO, 2016 WL 5234609, at *2 (N.D. Cal. Sept. 22, 2016) ("Even if

20  collateral estoppel did not apply, I consider Judge Tigar's constructions persuasive and absent a

21  showing that it would be erroneous to adopt them in this case, I will follow them.").  Indeed, the

22  Federal Circuit has explained that "[i]n the interest of uniformity and correctness, [it] consults the

23  claim analysis of different district courts on the identical terms in the context of the same patent."

24  *Finisar*, 523 F.3d at 1329; *see also Finjan, Inc. v. Symantec Corp.*, No. 14-CV-02998-HSG, 2017

25  WL 550453, at *3 (N.D. Cal. Feb. 10, 2017) ("When engaging in claim construction, district

26  courts have granted 'reasoned deference' to claim construction orders outside their jurisdiction

27  that address the same term in the same patent, given the importance of uniformity in claim

28  construction").  Thus, XU respectfully submits that the constructions from the Delaware Action

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CA  94111-4078

17

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CA 94111-4078

involving the same parties and the same patent claim should, be found highly persuasive, if not binding.

### C.    The Disputed Claim Terms in Claim 12 of the '903 Patent

As discussed above, Cisco's attempt to re-construe five claim terms and phrases in claim 12 should be rejected as barred under the doctrine of collateral estoppel.  Even if collateral estoppel did not apply, a set forth below, XU respectfully submits that none of these five claim terms and phrases require a specific construction because their meaning is clear on its face. Notably, Cisco even admits that its new proposed constructions do not resolve any dispute between the parties or otherwise impact the scope or meaning of claim 12; but, rather, are merely intended to clarify the claims for the jury.  (Dkt. 60 at p. 4).  It is well settled, however, that "district courts are not (and should not be) required to construe every limitation present in a patent's asserted claims"; but, rather, should do so only "[w]hen the parties present a fundamental dispute regarding the scope of a claim term."  *O2 Micro*, 521 F.3d at 1362; *see also GPNE*, 830 F.3d at 1372–73.  Thus, for this additional reason, the Court should deny Cisco's request to construe these claim terms and phrases.

### 1.  "Database"

| XU's Proposed Construction | Cisco's Proposed Construction |
|---|---|
| No construction needed. To the extent the Court believes a construction is necessary: "computer memory containing an organized collection of information that can be accessed, updated, and searched." | "computer memory containing structured data organized in records (rows) each containing fields that can be accessed, updated, and searched" |

As demonstrated above, Cisco should be estopped from re-litigating the construction of this claim term.  *Supra* at 14-15.  In particular, the terms "computer database" and "skill-set database" were litigated by the parties and addressed by the court during the Delaware Action. There the court held that neither term requires a special construction because their meaning is readily ascertainable.  (RJN, Ex. G at pp. 1, 2.)  Cisco's attempt to circumvent that prior decision

1    by construing the truncated term "database" is "tantamount to an improper attempt to 'reargue

2    claim construction issues which were already rejected by the Court.'" *See Apotex*, 526 F. Supp. 2d

3    at 993.  Accordingly, the Court should decline Cisco's request to re-construe this claim term.

4          Moreover, as the Delaware court correctly found, this claim term does not need

5    construction because its plain and ordinary meaning is very well understood.  "While it is a court's

6    job to elaborate on claim language that can sometimes be terse and/or difficult to parse, it need

7    not—and should not—construe language that is clear on its face." *Famosa, Corp. v. Gaiam, Inc.*,

8    No. 11-Civ-05703 (KBF), 2012 WL 865687, at *2 (S.D.N.Y. Mar. 14, 2012). "In other words,

9    courts should refrain from reading meaning into easily-understandable terms." *Id.*

10         But, to the extent the Court believes a specific construction is needed, XU proposes that

11   this term should be construed as: "computer memory containing an organized collection of

12   information that can be accessed, updated, and searched."[9]  This construction is aligned with the

13   claim language and the '903 Patent specification. The term "database" is never recited in isolation

14   in claim 12.  Rather, claim 12 recites the terms: "an inquiry-type database" and "a skill-set

15   database," and then specifies the type of information that is contained in each one of these two

16   databases; namely: the "inquiry-type database" contains "at least two layers of inquiry types,"

17   whereas the "skill-set database" contains "at least one entry that associates the expert with one of

18   the inquiry types and its underlying criteria grouping." Accordingly, the claim language is clear on

19   its face that both of these "databases" is an organized collection of information stored on a

20   computer, consistent with XU's proposed construction.

21         XU's proposed construction is also consistent with the disclosure in the specification,

22   which describes how these databases can be accessed, updated, and searched.  For example, figure

23   3 and its corresponding description discuss how database entries are accessed and mapped to an

24   _____

25   [9] XU originally proposed construing this term as simply "an organized collection of information
     that can be accessed, updated, and searched."  (Dkt. 71-1 at pp. 2-3.)  Although XU believes that it
26   is readily apparent from the claim language that the claimed "databases" of the computer-based
     match and route system are stored in a computer, in the interest of reducing the number of disputes
27   between the parties, XU has modified its proposed construction to clarify that the "organized
     collection" is contained in "computer memory."
28

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CA  94111-4078

1   inquiry in order to locate and identify the subject of an inquiry. ('903 Patent at 5:49-57, FIG. 3.)

2   Figure 3 and its corresponding description further describe how the databases are accessed and

3   populated/updated with relevant entries. ('903 Patent at 5:34-37 at FIG. 3.)

4          XU's construction also comports with relevant dictionaries and industry guides published

5   by different sources. (*See*, *e.g.*, Dkt. 72-2, 72-3, 72-4, 72-5, 72-6, 72-7.)  All of these

6   contemporaneous sources confirm that XU's proposed construction is consistent with the plain

7   and ordinary meaning of "database" at the time of the '903 Patent (*i.e.*, circa 2005).  For example,

8   Webster's New World Computer Dictionary (Tenth Edition, 2003) defines "database" as: "a

9   collection of related information about a subject organized in a useful manner that provides a base

10  or foundation for procedures, such as retrieving information, making conclusions, and making

11  decisions." (Dkt. 72-2, p. 97.)  Notably, XU's construction is even supported by Cisco's own

12  industry guides from that time period, which, define "database" as: "an organized collection of

13  data that can be easily accessed, indexed, managed, and updated."  (Dkt. 72-7.)  Additionally, as

14  explained by XU's technical expert, Dr. Ross, XU's construction is consistent with the knowledge

15  and understanding of a person of ordinary skill in the art at that time.  (Dkt. 72 at ¶¶26-34.)

16         Conversely, Cisco's proposed construction for "database" is flawed for several reasons.

17  For example, Cisco's construction improperly injects additional requirements into the term

18  "database" that are entirely absent from the claim language.  Specifically, Cisco's construction

19  requires that the claimed "database" include "structured data organized in records (rows) each

20  containing fields." (Dkt 71-1 at p. 2).  Importantly, nothing in claim 12 suggests, let alone

21  requires, any of these additional features.  Likewise, nothing in the specification suggests that the

22  claimed "skill-set database" or "inquiry-type database" must include these features.  (Dkt. 72 at

23  ¶¶33-34).  Thus, Cisco's attempt to read-in these additional requirements is plainly improper.  *See*,

24  *e.g.*, *Thorner v. Sony Computer Entertainment America LLC*, 669 F.3d 1362, 1366 (Fed. Cir.

25  2012) ("We do not read limitations from the specification into claims").

26         To the extent Cisco's construction is intended to limit the claimed "database" to a

27  particular form (or forms) of database, such as a relational database, *i.e.*, by requiring the data be

28  "organized in records (rows) each containing fields," this too is improper.  Nothing in the intrinsic

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CA  94111-4078

1    evidence disavows or excludes any particular form of database, and, a person of ordinary skill in

2    the art would have understood that many different well-known forms of databases, such as object

3    databases, relational databases, and text databases could be used to implement the claimed

4    invention. (Dkt. 72 at ¶¶27 & 33-34). Indeed, Cisco's expert, Dr. Houh, admitted that virtually

5    any form of database could be used. (*See* Walden Decl., Exh. B at 74:23-75:9, 78:13-22; 95:7-

6    97:11; 159:19-161:5; 201:11-202:17.)

7            Additionally, Cisco's extrinsic evidence does not support its proposed construction,

8    because it fails to demonstrate that a "database" requires any of the additional features in Cisco's

9    construction (and, if anything, supports XU's proposed construction), and, moreover, much of it is

10   not even from the applicable time frame for the '903 Patent. The Federal Circuit made clear in

11   *Phillips* that "the ordinary and customary meaning of a claim term is the meaning that the term

12   would have to a person of ordinary skill in the art in question **at the time of the invention**, i.e., as

13   of the effective filing date of the patent application." *Phillips*, 415 F.3d at 1313. Here, although

14   the '903 Patent was filed in 2005, much of Cisco's extrinsic evidence is from an earlier time

15   period, namely: 1996-2000. (Dkt. 73-2, 73-3, 73-4, 73-5). Indeed, Cisco's expert acknowledged

16   that he relied on "the skills and mindset of a person of ordinary skill in this field circa 1998-1999."

17   (Dkt. 73 at ¶33; Walden Decl., Exh. B at 121:17-25, 215:18-216:9.) Thus, Cisco's extrinsic

18   evidence should be given little or no weight.

19       **2.   "Database Entry" / "Entry"**

| XU's Proposed Construction | Cisco's Proposed Construction |
|---|---|
| No construction needed. | No construction necessary beyond the construction of "database." To the extent the Court declines to construe "database": "a record in a database having values for one or more fields each of which correspond to a type of information." |

For at least the same reasons as with the term "database," Cisco should also be estopped

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CA 94111-4078

from re-litigating the construction of these claim terms. *Supra* at 14-15. Moreover, the fact that Cisco is only asking the Court to construe these terms if it declines to construe the term "database," further highlights the impropriety of Cisco's position. Cisco's proposed construction for "database entry" and "entry" amounts to yet another improper attempt to reargue the claim constructions from the Delaware Action by injecting additional requirements into the claim for the claimed "databases," this time through the word "entry." *See Apotex*, 526 F. Supp. 2d at 993. Accordingly, the Court should decline to re-construe these claim terms.

Moreover, like with "database," the word "entry" does not need to be construed because its plain and ordinary meaning is well understood. (Dkt. 72, ¶35); *Famosa,* 2012 WL 865687, at *2. In contrast, Cisco cannot reasonably assert that replacing the well-known word "entry" with the phrase "record in a database having values for one or more fields each of which correspond to a type of information" would help the jury in any way to understand and apply the claim language. Additionally, Cisco again appears to be trying to limit claim 12 to certain forms of databases (*e.g.*, having records and fields). This is not permitted. *See, e.g., Thorner*, 669 F.3d at 1366.

### 3. "Skill-Set Database"

| *XU's Proposed Construction* | *Cisco's Proposed Construction* |
|---|---|
| No construction needed. | "the database that contains the identity of the expert, or group of experts that have the individualized knowledge on the topic being requested by the seeker" |

This exact claim term was litigated by the parties in the Delaware Action, where the court rejected Cisco's proposed construction and held that "skill-set database" does not need a specific construction. Curiously, Cisco now proposes an entirely new construction for this term. (Dkt. 71-1 at pp. 4-5.) Cisco's attempt to re-construe this term should be denied as improper. *Supra* at 14.

Moreover, as the Delaware court correctly held, this claim term does not need a special construction because its plain and ordinary meaning is well understood, namely: "a database that includes information about skills possessed by experts." *Famosa,* 2012 WL 865687, at *2. This

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CA  94111-4078

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CA 94111-4078

is supported by the specification, which states that the "skill-set database entries are each mapped, step 340, to the inquiry types associated with the experts in step 330 [which] is accomplished by associating the skill-set entry and the inquiry type to a unique numerical routing identifier." ('903 Patent at 5:46-57.)  As a result, "[w]hen a user (seeker) requests assistance with a particular inquiry type, step 350, the expert(s) associated with the skill-set entry mapped to the inquiry type by the numerical routing identifier are located and identified." (*Id*.; *see also id*. at 1:58-64, 2:40-43.)  In other words, the skill-set database includes skill-sets that provide the link between the inquiry types (*i.e.*, categories of assistance requested by seekers) and the experts who have knowledge about those inquiries.  Similarly, a person of ordinary skill in the art would have understood that the *specific type* of "information" in a "database" referred to as a "skill-set database" would be information pertaining to skills, and in the context of claim 12, the skills possessed by the experts that the claimed system is designed to locate.  (Dkt. 72 at ¶40.)

In contrast, Cisco's construction injects an additional feature into claim 12 that the skill-set database must "contain[] the identity of the expert, or group of experts."  Claim 12 recites no such feature, nor is there anything in the specification requiring that the skill-set database "contain the identity of experts."  Rather, the claim language and the specification repeatedly specify that experts are ***associated with*** entries in the skill-set database, thereby making clear that the experts themselves do not need to be "in the skill-set database."  ('903 Patent at claim 12 (reciting an "entry that associates the expert with one of the inquiry types"), 1:50-64, 5:46-57.  Thus, Cisco's attempt to read-in this requirement should be rejected as improper. *Thorner*, 669 F.3d at 1366.

### 4.  "A unique numeric routing identifier linked to each skill-set database entry and to the associated inquiry type in the inquiry-type database"

| XU's Proposed Construction | Cisco's Proposed Construction |
|---|---|
| No construction needed. | "a unique number linking one skill-set database record and one inquiry type in the inquiry-type database" |

As explained above, Cisco should be estopped from re-construing these claim terms by

23

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CA  94111-4078

attempting to construe the claim limitation as a whole.  *Supra* at 15-16.  In particular, the terms "unique numeric routing identifier," "skill-set database," "computer database," and "inquiry-type" were litigated by the parties and addressed by the Delaware court, which held that, with the exception of the term "inquiry type" (*see supra* at 8, 11), none of these terms requires a special construction.  (RJN, Ex. G at pp. 1-3.)  Other than articles and prepositions, the only remaining "terms" in this claim limitation are the words "linked," "associated," and "entry."  None of these commonly-used words need any construction, nor does Cisco even propose construing any of them individually.  Thus, the Court should reject Cisco's attempt to construe this limitation.

Moreover, Cisco's proposed construction does nothing to clarify the claim scope.  Indeed, it merely replaces "numeric routing identifier" with "number," and the words "each" and "associated" with the word "one."  Thus, beyond lacking any support in the intrinsic or extrinsic record for these changes, Cisco's construction is, at best, unnecessary and unhelpful.  *Famosa*, 2012 WL 865687, at *2; *see also Mipox,* 2017 WL 1367975, at *10.

**5.   "Identify the expert associated with the predetermined semantically-expressed inquiry type requested by the user by use of the numeric routing identifier"**

| XU's Proposed Construction | Cisco's Proposed Construction |
| --- | --- |
| No construction needed. | "identify in the skill set database the expert corresponding to the inquiry type requested by the user" |

Like with the limitation above, Cisco should be estopped from re-construing these claim terms by attempting to construe the limitation as a whole.  *Supra* at 15-16.  In particular, the terms "predetermined semantically-expressed inquiry type" and "numeric routing identifier" were litigated by the parties and addressed by the Delaware court, which adopted the parties' agreed-to construction for the former term and held that the latter term does not require any special construction.  (RJN, Ex. G at p. 1.)  The only other substantive words in this claim limitation are: "identify," "expert," "associated," "requested," and "user."  Once again, none of these commonly-

1   used words require any construction, nor does Cisco even propose construing any of these words

2   individually.  Accordingly, the Court should reject Cisco's request to construe this limitation.

3       Moreover, Cisco's proposed construction is flawed for several reasons.  For example,

4   Cisco injects the phrase "in the skill-set database" into this claim limitation.  Nothing in claim 12,

5   nor the specification, requires that the "expert" be identified "in the skill set database."  *Supra* at

6   23.  Thus, Cisco's attempt to read-in this requirement should be rejected as improper. *See*, *e.g.*,

7   *Thorner*, 669 F.3d at 1366.  Cisco's construction also entirely ignores the end of this claim

8   limitation, which requires that the expert be identified "by use of the numeric routing identifier."

9   This too is improper.  It is well settled that all of the words in the claim must be given meaning.

10  *See*, *e.g.*, *Digital-Vending Servs. Int'l, LLC v. Univ. of Phoenix, Inc.*, 672 F.3d 1270, 1275 (Fed.

11  Cir. 2012) ("This construction is thus contrary to the well-established rule that 'claims are

12  interpreted with an eye toward giving effect to all terms in the claim.'") (citations omitted).

13      Additionally, beyond the defects above, Cisco's construction merely replaces the term

14  "associated with" with "corresponding to" and the term "predetermined semantically expressed

15  inquiry type" with "inquiry type."  Once again this is, at best, unnecessary and unhelpful.

16  *Famosa*, 2012 WL 865687, at *2; *see also Mipox*, 2017 WL 1367975, at *10.

17  **V.   CONCLUSION**

18      Accordingly, in view of the foregoing, XU respectfully requests that the Court reject

19  Cisco's attempt to re-construe claim 12 of the '903 Patent and, instead, adopt the Claim

20  Construction Order from the Delaware Action.  Alternatively, to the extent that the Court believes

21  construction is needed for any claim terms, XU requests that its proposed constructions be

22  adopted, and that Ciscos's construction be rejected.

23

24  Dated:   May 21, 2018                    **BRYAN CAVE LEIGHTON PAISNER LLP**

25                                           By:  */s/ Joseph J. Richetti*
                                                  Joseph J. Richetti
26                                                Attorneys for Plaintiff
                                                  XPERTUNIVERSE, INC.
27

28

BRYAN CAVE LEIGHTON PAISNER LLP
THREE EMBARCADERO CENTER, 7TH FLOOR
SAN FRANCISCO, CA  94111-4078