UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| XPERTUNIVERSE, INC., Plaintiff, v. CISCO SYSTEMS, INC., Defendant. | Case No. 17-cv-03848-RS **ORDER GRANTING MOTION TO STAY PENDING REEXAMINATION OF CLAIM 12 OF U.S. PATENT NO. 7,499,903** |

**I. INTRODUCTION**

Defendant Cisco Systems ("Cisco") moves for a stay of this patent infringement litigation pending reexamination of the single patent claim asserted by plaintiff XpertUniverse, ("XU") by the United States Patent and Trademark Office ("PTO"). According to Cisco, a stay is appropriate because the reexamination process will likely narrow or possibly eliminate the asserted claim entirely. XU opposes Cisco's motion, on the grounds that a stay is inappropriate at this stage of litigation, and reexamination will not narrow the issues in this case. Pursuant to Civil Local Rule 7-1(b), the motion is suitable for disposition without oral argument, and the hearing set for July 19, 2018, is vacated. For the reasons discussed below, this action will be stayed until the PTO issues a decision on the reexamination.

**II. BACKGROUND**

On July 6, 2017, XU filed a complaint against Cisco alleging infringement of U.S. Patent No. 7,499,903 (the "'903 Patent"), which relates to computer-based expert location systems and

methodologies. On August 30, 2017, Cisco filed a motion seeking several alternative forms of relief, including transfer to the District of Delaware, a stay of this action pending the resolution of parallel proceedings in Delaware, and dismissal of the action in its entirety. That motion was denied.[1] In January of 2018, XU filed an amended complaint, which Cisco answered. On May 8, 2018, XU's motion for partial summary judgment was granted, which held Cisco precluded from challenging the validity of the '903 Patent because the issue had been raised and litigated to final judgment in an earlier proceeding between the parties in Delaware (the "Delaware Action"). Following the Court's order, on June 1, 2018, Cisco filed an *ex parte* reexamination request with the PTO, seeking reexamination of Claim 12 of the '903 Patent. Briefing is complete for a *Markman* hearing scheduled for July 27, 2018. Three days before filing its responsive claim construction brief, Cisco moved to stay these proceedings. On June 26, 2018, the PTO granted Cisco's request for reexamination, based on a finding of two substantial new questions of patentability.

### III. LEGAL STANDARDS

"Courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination." *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988) (citing *Landis v. North American Co.*, 299 U.S. 248, 254 (1936). In determining whether or not to stay litigation after a petition for reexamination has been granted, the following factors should be considered: "(1) whether discovery is complete and whether a trial date has been set; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party." *PersonalWeb Techs., LLC v. Apple, Inc.*, 69 F. Supp. 3d 1022, 1025 (N.D. Cal. 2014). A court is not required to stay patent litigation simply because parallel PTO proceedings have been instituted. *Vikase Corp. v. Am. Nat. Can Co.*, 261 F.3d 1316, 1328 (Fed. Cir. 2001).

---

[1] The claim for willful infringement was, however, dismissed with leave to amend.

## IV. DISCUSSION

A. Stage of the Case

While there has been considerable motion practice in this action since XU's initial complaint was filed a year ago, the case is not particularly advanced in terms of substantive development. Much of the litigation up to this point has focused on the preclusive effect of proceedings in the Delaware Action rather than on the substance of the current dispute. Discovery has begun, but has so far been limited to an exchange of interrogatories and document production requests. The parties have not conducted any fact depositions or begun the ESI discovery process. No trial date has been set, and there are no deadlines scheduled to follow claim construction on July 27.

XU responds that a more advanced stage of litigation is evidenced by the resolution of several dispositive motions,[2] and completed briefing on claim construction. *See Int'l Test Solutions, Inc. v. Mipox Int'l Corp.*, No. 16-cv-00791-RS, 2017 WL 1316549, at *2 (N.D. Cal. Apr. 10, 2017); *Interwoven, Inc. v. Vertical Comp. Sys., Inc.*, No. 10-cv-4645-RS, 2012 WL 761692, at *4 (N.D. Cal. Mar. 8, 2012); *Ultra Prods., Inc. v. Antec, Inc.*, No. 09-cv-425-RS, 2010 WL 1688538 at *3-4 (N.D. Cal. Apr. 26, 2010). Moreover, XU takes the position that significant discovery has already taken place, including two expert witness depositions.[3] A stay is unwarranted, argues XU, in light of the substantial time and effort the parties have already devoted to this matter.

This case is, however, distinguishable from cases where a stay was denied due to the advanced stage of the litigation. In *Interwoven*, claim construction briefing was complete before defendants filed a petition for *inter-partes* review, and the *Markman* hearing took place ten days after defendant filed a motion to stay. In *International Test Solutions*, the party seeking a stay had

---

[2] The parties have briefed and received rulings on a motion to dismiss, a motion for judgment on the pleadings, and a motion for partial summary judgment.

[3] Cisco clarifies that these two depositions were related to the parties' non-testifying experts' claim construction declarations and therefore not part of expert discovery.

waited until after a claim construction order had been issued to request an *ex parte* reexamination of the patents-in-suit. Finally, in *Ultra Products*, while a claim construction had not yet taken place, the case was found not to be in its infancy because it was already two years old. Here, Cisco filed its *ex parte* reexamination request shortly after XU filed its opening claim construction brief and well before the scheduled date for the *Markman* hearing. This case may be a year old, but it has not progressed so far that a stay would be unreasonable. As claim construction has yet to take place, discovery is not closed, and no trial date has been set, the "stage of the case" factor supports a stay.

B. Narrowing of Issues

The PTO has granted Cisco's request for reexamination of the single claim at issue in this case. The PTO's most recent data show that 13% of *ex parte* reexaminations initiated by a third party requester result in all claims being canceled, 65% result in amended claims, and 21% result in the claims being confirmed. Given these statistics, Cisco argues there is a high probability that Claim 12 will either be cancelled, which would end this litigation, or that the claim will be amended, which would substantially alter this case. An amendment to Claim 12 could eliminate XU's claim for willful infringement based on conduct that occurred subsequent to the infringement finding in the Delaware Action. *See Plumley v. Mockett*, 836 F. Supp. 2d 1053, 1075 (C.D. Cal. 2010) (granting summary judgment in favor of alleged infringer on the issue of willfulness, noting that "at least one other district court has held that a patentee's willful infringement claim fails as a matter of law where the PTO requires amendments to the patent before issuing a reexamination certificate"). Substantive changes to Claim 12 may also impact Cisco's liability for any alleged infringement occurring prior to the issuance of a reexamination certificate. *See Bloom Eng'g Co., Inc. v. N. Am. Mfg. Co.*, 129 F.3d 1247, 1249 (Fed. Cir. 1997) (35 U.S.C. §§ 307 and 252 "relieves those who may have infringed the original claims from liability during the period before the claims are validated."). Even if no modifications are made, Cisco argues the Court and the parties will likely benefit from the PTO's expert review of the patent claims in advance of a *Markman* hearing.

XU does acknowledge that cancellation of Claim 12 in its entirety would undeniably impact this case. *See* Opp. at 6. Absent this relatively unlikely event, XU argues there is little real possibility of substantive amendment to Claim 12, which was already the subject of litigation in the Delaware case, including a validity challenge. While XU faults Cisco for relying on general PTO statistics as demonstrating a likelihood of alteration to Claim 12, Cisco's position appears considerably less speculative now that the PTO has granted its request for reexamination. Because a single claim is at issue here, reexamination could well either end or significantly narrow this litigation. Accordingly, this factor favors granting a stay.

C. Undue Prejudice

*1. Timing of Petitions*

A court evaluating undue prejudice should "consider evidence of dilatory motives or tactics, such as when a party unduly delays in seeking reexamination of a patent." *KLA-Tencor Corp. v. Nanometrics, Inc.*, No. C 05-03116-JSW, 2006 WL 708661, at \*3 (N.D. Cal. Mar. 16, 2006). Cisco argues its reexamination request and motion to stay are timely filed, roughly six months after receiving XU's infringement contentions. As Cisco points out, courts in this district have routinely granted stays pending reexamination when the reexamination petition was filed within six months after receiving a party's infringement contentions. *See, e.g., Cypress Semiconductor Corp. v. GSI Tech., Inc.*, No. 13-cv-02013-JST, 2014 WL 5021100 at \*4 (N.D. Cal. Oct. 7, 2014) (collecting cases that found no undue prejudice where a party waited until after it "receiv[ed] infringement contentions to analyze the claims alleged and then filing petitions for review"); *Karl Storz Endoscopy-Am., Inc. v. Stryker Corp.*, No. 14-cv-00876-RS, at \*6 (N.D. Cal. Mar. 30, 2015) (granting a stay pending *inter-partes* review where petition was filed six months after initial infringement contentions were received).

XU, on the other hand, contends Cisco has been on notice of XU's infringement contentions with respect to Claim 12 for years, since it was first sued on the claim in the Delaware Action. XU opposes Cisco's motion to stay as an attempt to circumvent the Court's ruling that Cisco is precluded from challenging the validity of the '903 Patent, and to delay these proceedings

for improper reasons. Cisco may indeed have made a strategic choice to seek reexamination only after a ruling on estoppel, but nothing precluded Cisco from seeking input from the PTO once it became clear it would not be permitted to raise invalidity arguments in this forum. The petition for reexamination was filed soon after the Court's order was issued, seven weeks before claim construction was scheduled to take place. This sequence of events does not demonstrate undue delay or a desire to seek an unfair tactical advantage. Here, as in *Stryker*, the petition for reexamination is lengthy and detailed. Cisco states that it took a considerable amount of time to review XU's infringement allegations and search for relevant prior art based on what Cisco views as XU's expanded infringement assertions. Moreover, the PTO granted Cisco's request for reexamination three weeks after the request was received, a response time far shorter than the statutory maximum of three months. Thus, even if the average reexamination process takes a full twenty-six months (according to the PTO's most recent statistics), there is reason to believe that reexamination of a single claim—as opposed to multiple claims and multiple patents—will be far more expedient.

2. *Competitive Relationship*

Competition between the parties is another factor which may "weigh in favor of finding undue prejudice." *VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1318 (Fed. Cir. 2014). Here, because XU no longer makes or sells any products, the parties lack any type of competitive market relationship, direct or otherwise. Moreover, despite being advised by the Delaware court to file a new action for patent infringement targeting previously unchallenged products, XU waited three and a half years before doing so, a delay that undercuts its professed urgency in resolving this matter. A slight additional delay, in Cisco's view, will not result in irreparable harm to XU. Unsurprisingly, XU disagrees with Cisco's characterization of the length of delay caused by a stay of litigation, but as many courts in this district have held, mere delay in litigation does not by itself demonstrate undue prejudice. *See, e.g., Nanometrics, Inc. v. Noval Measuring Instruments, Ltd.*, No. C-06-2252-SBA, 2007 WL 627920, at *3 (N.D. Cal. Feb. 26, 2007); *Evolutionary Intelligence, LLC v. Facebook, Inc.*, No. 13-C-4202-SI, 2014 WL 261837, at

*3 (N.D. Cal. Jan. 23, 2014); *Robert Bosch Healthcare Sys., Inc. v. Cardiocom, LLC*, No. 5:12-cv-3864-EJD, 2012 WL 6020012, at *4 (N.D. Cal. Dec. 3, 2012). Neither is it particularly persuasive for XU to complain that a stay will necessitate a greater expenditure of "time and resources seeking the relief it deserves." Opp. at 8. Significant amounts of time and expense will be spent on this litigation regardless of whether the case is stayed or not. On balance, any prejudice XU will suffer from a reexamination-related stay is insufficient to outweigh other facts favoring a stay.

## V. CONCLUSION

In light of the PTO's expeditious decision to grant reexamination of Claim 12 of the '903 Patent, the circumstances of this case favor a stay pending resolution of the reexamination process. While a stay may frustrate XU's desire to plow forward with its case against Cisco, it has not established that it will suffer irreparable or undue harm beyond that suffered by any plaintiff faced with a delay in litigating its claims. All further deadlines and hearings in this matter are hereby vacated.

**IT IS SO ORDERED**.

Dated: July 13, 2018

RICHARD SEEBORG
United States District Judge