United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| XPERTUNIVERSE, INC., <br> Plaintiff, <br> v. <br> CISCO SYSTEMS, INC., <br> Defendant. | Case No. 17-cv-03848-RS <br><br> **ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR LEAVE TO AMEND INFRINGEMENT CONTENTIONS** |

## I. INTRODUCTION

In July 2017, Plaintiff XpertUniverse, Inc. ("XU") filed the present action in federal court accusing Defendant Cisco Systems, Inc. ("Cisco") of infringing U.S. Patent No. 7,499,903 ("the '903 patent"). The action was stayed from July 13, 2018 until May 30, 2019. XU now moves for leave to amend is infringement contentions to (i) incorporate three new products and (ii) assert infringement under 35. U.S.C. § 271(f), which covers persons who supply the components of a patented invention "in such manner as to actively induce the combination of such components outside of the United States in a manner that would infringe the patent" if done within the country. For the reasons set forth below, this motion is granted in part and denied in part.

## II. BACKGROUND

The present action is not the first time XU and Cisco have litigated alleged infringement of the '903 patent. In March 2009, XU filed suit against Cisco in the District of Delaware. XU's infringement contentions in that case (the "Delaware Case") accused Cisco's Unified Expert Advisor product ("Expert Advisor") and Remote Expert products, among others. On July 6, 2017,

more than four years after the trial in the Delaware Case, XU initiated the present action. In November 2017, XU served infringement contentions in the present action accusing Remote Expert versions 1.9 through 11, as well as Cisco's Unified Contact Center Enterprise ("UCCE") and Cisco's Unified Contact Center Express ("UCCX"). XU specifically accused versions 10 and 11 of the UCCE and UCCX products. While the Complaint alleges infringement under 35 U.S.C. § 271(a), neither XU's Complaint nor its infringement contentions allege infringement under Section 271(f) of that chapter.[1]

### A. XU's Knowledge of Cisco's Global Sales

Cisco is a global company that sells products all over the world. Cisco's international sales have come up in two prior proceedings involving XU. First, Cisco produced international sales data in the Delaware Case. According to Cisco, this sales data corresponded to "accused products," however it is unclear whether those products are the same as those at issue in this case. For example, Cisco submitted a declaration in the Delaware Case that expressly discussed Cisco's deployment of Remote Expert outside of the United States, however the cited portion of that declaration addresses Remote Expert 1.5/1.8, which is not at issue in this action. Opp. Mot. Amend, Ex. 6 at ¶ 15. Cisco's expert, Michael J. Wagner, also submitted a damages report which discussed international sales of Expert Advisor; however, this data appears to be directed to a discontinued version which is not at issue here. *Id.*, Ex. 5.

Cisco's international sale of products also came up in an arbitration proceeding between XU and its former legal counsel regarding alleged legal malpractice. XU took the position that Cisco had sold the Remote Expert technology accused in the Delaware Case outside of the United States and sought discovery of such sales data in order to evaluate its former counsel's diligence in pursuing discovery in the Delaware Case. Despite this request, no such discovery was produced during the course of the arbitration.

---

[1] XU subsequently filed a First Amended Complaint ("FAC"). The differences between the original complaint and the FAC have no bearing on the present motion.

Discovery in the present action eventually revealed that Cisco had sold at least some of the products accused in this case internationally. On June 25, 2018, after several months of negotiation between the parties, Cisco produced four spreadsheets containing raw sales data for (1) accused products with a "ship to" address in the Americas and (2) sales where the revenue was recognized in the U.S. These spreadsheets documented the sale of a large number of the accused products to persons with "ship to" addresses outside of the United States. It specifically revealed the sale and shipping of accused products to approximately 70 different countries.

### B. New Cisco Products Sought to be Added

XU seeks to name three additional products in its infringement contentions, specifically the Packaged Contact Center Enterprise ("PCCE"), Hosted Collaboration Solution for Contact Center ("HCS-CC"), and Customer Journey Platform ("CJP") products. The PCCE and HCS-CC products were both released several years before XU filed the present action and multiple versions of these products have been released over the years. While this action was stayed, Cisco released its newest version of PCCE and HCS-CC, version 12. The CJP technology (originally branded as CC-One) was developed by a third-party company by the name of BroadSoft and was originally released in December 2016. Cisco acquired the product in February 2018 when it acquired BroadSoft.

### III. LEGAL STANDARD

Under Patent Local Rule 3-6, a party may amend its infringement contentions only upon a timely showing of good cause. Patent L.R. 3-6. "Good cause exists where the moving party has acted diligently and the opposing party will not be prejudiced." *Verinata Health, Inc. v. Ariosa Diag. Inc.*, 236 F. Supp.3d 1110, 1113 (N.D. Cal. 2017). Circumstances that may, absent undue prejudice to the non-moving party, support a finding of good cause include "[r]ecent discovery of nonpublic information about the Accused Instrumentality which was not discovered, despite diligent efforts, before the service of the Infringement Contentions." Patent L.R. 3-6(c).

The moving party bears the burden of showing it acted diligently. *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366 (Fed. Cir. 2006); *Verinata Health*, 236 F. Supp. 3d at 1113. That party must specifically show "(1) diligence in discovering the basis for

1  amendment; and (2) diligence in seeking amendment once the basis for amendment has been

2  discovered." *Verinata Health*, 236 F. Supp. 3d at 1113 (quotation omitted); *accord GoPro, Inc. v.

3  *360Heros, Inc.*, No. 16-cv-01944, 2017 WL 1278756, *2 (N.D. Cal. Apr. 6, 2017). "If the court

4  finds that the moving party has acted with diligence, it must then determine whether the

5  nonmoving party would suffer prejudice if the motion to amend were granted." *GoPro*, 2017 WL

6  1278756, at *2. "Prejudice is typically found when amending contentions stand[s] to ." *Id.*

### IV. DISCUSSION

#### A. Diligence

XU argues it acted diligently with respect to both its request to add three new products to its infringement contentions and its request to include allegations of infringement under 35 U.S.C. § 271(f). As noted above, the three products XU seeks to add are PCCE, HCS-CC, and CJP.

#### 1. **Addition of the PCCE and HCS-CC Products**

It is undisputed that the initial versions of both PCCE and HCS-CC were released long before XU filed its infringement contentions. Indeed, version 10 of these two products, which XU seeks to include in its amended contentions, had been released by 2014. XU argues that it should nonetheless be permitted to include these products in its amended contentions because its preliminary infringement contentions accused UCCE, UCCX, and "[o]ther version[s] of Unified Contact Center Enterprise," as well as "[a]ny other similarly structured or function solutions, products, and/or components." Malz Decl., Ex. 39 at 3.[2] According to XU, PCCE and HCS-CC are simply "two other flavors of the UCCE product" and were therefore included in its initial infringement contentions. Mot. Amend 13. Furthermore, XU argues, Cisco's exhibits reveal that PCCE and HCS-CC *include* a copy of the accused UCCE product and are necessarily implicated by XU's preliminary infringement contentions for that reason as well. Finally, XU argues that, at a minimum, it should be permitted to amend to include version 12 of the PCCE and HCS-CC

---

[2] The Malz declaration and associated exhibits are attached to Cisco's opposition to XU's motion to amend its infringement contentions.

products because this version was released after XU filed its infringement contentions and while the case was stayed.

Cisco disputes whether XU adequately named the PCCE and HCS-CC products in the infringement contentions. Patent L.R. 3-1(b) (specifying that "identification [of accused products] shall be as specific as possible."); *Oracle Am., Inc. v. Google, Inc.*, No. C 10-03561 WHA, 2011 WL 4479305, at *2 (N.D. Cal. Sept. 26, 2011) (stating that the Patent Local Rules do "not tolerate broad categorical identifications" or "the use of mere representative examples" in a party's infringement contentions). Furthermore, Cisco argues, XU should have been aware of prior versions of the PCCE and HCS-CC products by the time it filed its infringement contentions because information about these products was publicly available at that time.

XU's argument with respect to version 12 of the PCCE and HCS-CC products is persuasive. The most recent version of these products was released while the case was stayed, and XU sought leave to amend to add these products shortly after the stay was lifted. Although Cisco suggests that XU did not act diligently because it failed to name *prior* versions of these products in the initial infringement contentions, Cisco points to no authority that tends to support this reasoning. Cisco is correct, however, that XU did not adequately identify prior versions of the PCCE and HCS-CC products in its initial contentions and that XU's failure to discover and name these prior versions resulted from a lack of diligence. In sum, while XU did not act diligently with respect to prior versions of the PCCE and HCS-CC products, it did act diligently with respect to version 12 of these products.

### 2. Addition of the CJP Product

Cisco gained ownership of the CJP product on February 2, 2018 when it acquired BroadSoft. Cisco nonetheless argues that XU should have accused the CJP product in its November 2017 contentions because the product was originally released in December 2016 and Cisco had announced its planned acquisition of BroadSoft in October 2017. At a minimum, Cisco argues, XU should not have waited quite so long after the February 2018 acquisition to file the present motion. Indeed, XU waited 25 weeks (excluding the period of stay) after the acquisition

was complete to file the present motion. Cisco's arguments are ultimately unavailing. XU could not have plausibly alleged Cisco was infringing the '903 patent *before* XU acquired the product. While Cisco correctly notes that XU waited several months after the acquisition before seeking leave to amend, the February 2018 press release did not necessarily put XU on notice that Cisco intended to sell the CJP/CC-One product. Indeed, the press release neither mentioned the CC-One product nor discussed Cisco's plans to rebrand and sell this product under the name CJP. Rather, it appears Cisco first announced its intent to rebrand the CC-One product and offer it for sale in May 2018—a mere six weeks before the stay was entered. In light of these facts, XU's delay in filing the present motion does not suggest a lack of diligence with respect to the CJP.

### 3. Addition of Allegations of Infringement Under 35 U.S.C § 271(f)

In addition to requesting leave to add the three aforementioned products to its infringement contentions, XU seeks to incorporate new infringement contentions under 35 U.S.C § 271(f). XU contends that it acted diligently in discovering the basis for amendment because information regarding Cisco's international sale of the accused product was non-public and was only recently uncovered through discovery. XU has requested this information since early in the discovery period. Cisco disputed, and still disputes to some extent, XU's entitlement to such data. In June 2018, however, Cisco produced raw revenue data for certain sales of accused products where (1) the "ship to" address was for somewhere in the Americas or (2) the revenue for the sale was "recognized" in the United States. This data revealed Cisco had supplied the accused products to customers outside of the United States.

According to XU, this non-public sales data provided it, for the first time, with sufficient information to allege infringement under Section 271(f). This section imposes liability on anyone who "supplies or causes to be supplied in or from the United States all or a substantial portion of the components of a patented invention" in a way that "actively induce[s]" persons outside of the United States to combine the components in a way that would infringe the patent were it done within the United States. 35 U.S.C. § 271(f). Once XU received the aforementioned sales data in June 2018, XU immediately informed Cisco of its intent to amend its infringement contentions to

address Section 271(f). The case was stayed in July. Two weeks after the stay was lifted, XU filed the present motion. Accordingly, XU argues, it also acted diligently in requesting leave to amend once it became aware of a basis to do so.

Cisco responds that XU knew about Cisco's international sale of the accused product by the time it filed its infringement contentions, and therefore has no excuse for failing to allege infringement under Section 271(f) in its initial contentions. Cisco points to a draft discovery letter sent from XU to Cisco on April 17, 2018, in which XU incorrectly stated that it "ha[d] accused Cisco of component infringement under § 271(f)." Malz Decl., Ex. 40. Next, Cisco notes that it is a global company and that public disclosures from before November 2017 confirm Cisco sells products outside of the United States. Finally, Cisco argues, XU learned during prior proceedings that Cisco sold "accused products" outside of the United States. In particular, XU received a declaration in the Delaware Case that Cisco sold Remote Expert internationally. Furthermore, in a subsequent arbitration proceeding against its former counsel, XU argued it may have had a claim under Section 271(f) and requested discovery with respect Cisco's international sales. In Cisco's view, these facts show XU knew Cisco had sold the accused products internationally prior to November 2017.

XU has the stronger argument. Although Cisco declares that the Delaware Case put XU on notice that "accused products" were sold outside of the United States, the documentation upon which Cisco relies does not appear to relate to the *specific accused products at issue here*. Similarly, XU's assertion in the arbitration proceeding that Cisco had sold accused products *in the Delaware Case* does not mean they knew the accused products *in the present action* were being sold abroad. While XU admits it has known at all relevant times that Cisco was a global company that sold at least some of its products internationally, it maintains that it did not know whether the accused products in this case were among the items Cisco offered internationally. Although XU certainly had a basis to suspect Cisco was selling some of the relevant products internationally, failure to allege infringement of Section 271(f) based on this hunch does not evince a lack of

diligence.[3]

**B. Prejudice**

Granting XU's motion for leave to amend will not significantly prejudice Cisco. In its request for a stay, Cisco acknowledged that this case is still at a very early stage. The parties have not yet completed written discovery, no depositions have taken place, and the *Markman* hearing is still months away. Although XU seeks leave to add three new products, the addition of these products is unlikely to prejudice Cisco. First, the PCCE and HCS-CC products are alleged to infringe the '903 patent for essentially the same reasons as the UCC products—indeed these products appear to be closely related to the UCC products. The CJP product is admittedly a brand new addition to this case. XU has, however, represented that addition of this product will not require the construction of any additional claims and that it intends to rely on substantially the same theories of infringement set forth in its original infringement contentions.

Cisco responds that addition of these new products would result in prejudice because Cisco will be forced to conduct additional investigation and to develop corresponding non-infringement defenses. Of course, this is true of any request for leave to amend that adds new products. Given the early stage of the case, Cisco has ample time to investigate these products and will not be unduly prejudiced by this additional discovery burden. XU has stated its willingness to stipulate to an expansion of the number of interrogatories each party may serve, thereby eliminating any prejudice related to the fact that Cisco has served most, if not all, of its allotted interrogatories.

Inclusion of infringement contentions under Section 271(f) similarly does not require consideration of any new patents or claims. Although this amendment will expand the scope of the

---

[3] Cisco advances an independent argument that leave to amend should be denied because the proposed amendments do not satisfy Patent Local Rule 3-1. Cisco contends that XU fails to identify the allegedly infringing "components" or to identify which claim elements are satisfied by any given component. Similarly, XU purportedly does not explain what Cisco did to "induce" the combination of the challenged components or how these components are "especially made or especially adapted for us in the invention." 35 U.S.C. § 271(f)(2). Neither party has adequately briefed this issue, accordingly it will not be addressed here. Moreover, even if Cisco were correct that the proposed amendment failed to satisfy the requirements of Patent Local Rule 3-1, it is not clear that denying leave to amend would be the proper remedy.

case, this expansion is not prejudicial given the early stage of discovery. Cisco argues it has been procedurally prejudiced by being deprived of the opportunity to file an early motion for summary judgment with respect to this theory of relief. Cisco does not, however, explain the practical effects of this delay. Up until now, Section 271(f) has not been a part of this action, accordingly it is difficult to see how Cisco's inability to seek summary judgment with respect to this theory of relief has harmed the company. Finally, Cisco's argument that XU should have sought leave to amend its complaint before amending its infringement contentions appears to have no bearing on the question of prejudice. In sum, the requested amendments will not significantly prejudice Cisco.

**C. Motion to Seal**

XU moves to file under seal portions of Exhibit A to its motion for leave to amend, as well as Exhibits 6 and 12 to the Declaration of Alexander Walden. The reason for this motion is that the aforementioned documents include information designated by Cisco as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" pursuant to the terms of the Protective Order entered in this case. In conformity with Civil Local Rule 79-5(e), Cisco submitted a declaration setting forth the basis for sealing these documents. This declaration explains that Exhibit A includes information about the company's sales which could harm its competitive standing. Cisco, however, does not oppose the filing of Exhibits 6 and 12 on the public record and recommends a narrower set of redactions for Exhibit A. The proposed redactions set forth in Cisco's June 19, 2019 filing are approved. XU's motion to seal is denied with respect to Exhibits 6 and 12.

Cisco also moves to seal certain portions of (1) its opposition brief, (2) a Letter from Philip Rovner to Judge Richard Andrews, (3) the expert report of Walter Bratic, (4) the expert report of Michael J. Wagner, and (5) the declaration of William Dry. Because Cisco's designated redactions are limited to business and sales data which the company has an interest in keeping private, this motion to seal is granted with respect these limited redactions. To the extent Cisco seeks to file the *entirety* of the Bratic expert report under seal based on XU's designation of the report as confidential, the motion to seal is denied because XU did not file the requisite declaration under

Civil Local Rule 79-5(e).

Finally, XU requests leave to file under seal the entirety of Exhibit 3 to the Declaration of Alexander Walden in support of its reply brief, which Cisco has designated as "CONFIDENTIAL – ATTORNEYS EYES ONLY – SUBJECT TO PROTECTIVE ORDER." Cisco filed a declaration pursuant to Civil Local Rule 79-5(e) explaining that certain portions of Exhibit 3 contain information about Cisco's sales and proposing a more tailored redaction of this document. XU is granted leave to seal only those portions identified in Cisco's July 9, 2019 filing.

## V. CONCLUSION

For the reasons set forth above, the motion for leave to amend is granted in part and denied in part. XU is granted leave to amend its infringement contentions to accuse the CJP product and version 12 of the PCCE and HCS-CC products, but not prior versions of the PCCE and HCS-CC products. Furthermore, XU is granted leave to amend to include allegations of infringement under Section 271(f).

**IT IS SO ORDERED**.

Dated: July 29, 2019

_____
RICHARD SEEBORG
United States District Judge