UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| XPERTUNIVERSE, INC.,<br><br>Plaintiff,<br><br>v.<br><br>CISCO SYSTEMS, INC.,<br><br>Defendant. | Case No. 17-cv-03848-RS<br><br>**ORDER DENYING CISCO'S MOTION TO STRIKE APPENDICES F1, F2, G1, AND G2 TO XPERTUNIVERSE'S INFRINGEMENT CONTENTIONS** |

## I. INTRODUCTION

In July 2017, Plaintiff XpertUniverse, Inc. ("XU") filed the present action in federal court accusing Defendant Cisco Systems, Inc. ("Cisco") of infringing U.S. Patent No. 7,499,903 ("the '903 patent"). The action was stayed from July 13, 2018 until May 30, 2019. Cisco now renews its motion to strike Appendices F1, F2, G1, and G2 to XU's infringement contentions, which was fully briefed prior to the stay. A hearing was held on July 18, 2019 and the motion was taken under submission. For the reasons set forth below, the motion to strike is denied.

## II. BACKGROUND

### A. Prior Infringement Action Between XU and Cisco

The present action is not the first time XU and Cisco have squared off over alleged infringement of the '903 patent. In March 2009, XU filed a complaint against Cisco in the District of Delaware. XU's infringement contentions in that case (the "Delaware Case") accused the Cisco Unified Expert Advisor ("Expert Advisor") product and the Remote Expert product, among others. Evidence in that case showed Expert Advisor was, at the time, an optional feature or add-

on for the Cisco Unified Contact Center ("UCC").[1] Publicly available documentation confirms that Expert Advisor was a feature of UCCE versions 7.2, 7.5, and 8.0.

At the close of discovery in the Delaware Case, Cisco moved for summary judgment of no *indirect* infringement of the '903 patent by either the Expert Advisor or Remote Expert products. To establish indirect infringement, XU had to show Cisco's customers *directly* infringed the patent and that Cisco induced this infringement. The court noted that "XU seems to concede that the products have optional functionalities, and that if the end user does not use those features, there is no direct infringement" by those users. *XpertUniverse, Inc. v. Cisco Sys., Inc.*, No. 09-157-RGA, 2013 WL 865974, at *2 (D. Del. Mar. 7, 2013). The court concluded there was insufficient evidence that Cisco's customers had used the infringing features of Expert Advisor and Remote Expert, rejecting the testimony of XU's expert in the process. Accordingly, the court granted partial summary judgment in Cisco's favor with respect to indirect infringement. *XpertUniverse, Inc. v. Cisco Sys., Inc.*, No. 09-157-RGA, 2013 WL 867640, at *8, 11 (D. Del. Mar. 8, 2013).

Despite this setback, XU proceeded to trial on its direct infringement claims. The jury found, *inter alia*, that the Expert Advisor and Remote Expert products infringed claim 12 of the '903 patent. The court upheld this verdict, but refused to grant an injunction because Cisco had stopped including the infringing features in these products. Ultimately, the court entered a judgment of direct infringement of the '903 patent with respect to the Expert Advisor and Remote Expert products. The judgment also addressed U.S. Patent No. 7,366,709, which is not at issue here. Finally, the District of Delaware entered judgement for Cisco on all other claims, including the indirect infringement claims which were the subject of the summary judgment order. Cisco filed a Notice of Appeal, but subsequently withdrew that appeal.

**B. Procedural Background in this Case**

On July 6, 2017, XU initiated the present action, once again alleging infringement of the

---

[1] There are multiple versions of the UCC products, including Cisco's Unified Contact Center Enterprise ("UCCE") and Cisco's Unified Contact Center Express ("UCCX").

'903 patent. The Complaint accuses recent versions of Remote Expert, as well as other products that "incorporate Cisco's Remote Expert products or similar technology (including, but not limited to, Cisco's Unified Communications and Unified Contact Center product suites)." Compl. ¶ 77. The Complaint describes how version 11 of Remote Expert meets each of the elements of claim 12 of the '903 patent, but does not specify how any other product satisfies the limitations of any of the claims in this patent.

On August 30, 2017, Cisco moved to dismiss, *inter alia*, XU's claims with respect all products other than Remote Expert. Cisco argued XU's allegations were too vague to put Cisco on notice of the accused products, noting that the Complaint failed to explain how exactly these other products infringed the '903 patent. XU responded that it had plausibly alleged infringement as to products that incorporate "the Remote Expert [s]olution and [r]elated [t]echnology." Opp. Mot. to Transfer, Stay, Dismiss, or Strike at 19. XU contended that a plaintiff is "not required to mechanically map every asserted claim element onto every accused product or technology"; rather it is sufficient to indicate that the "general class of other application" is similar to the named product. *Id.* at 20 (quoting *Novitaz, Inc. v. inMarket Media, LLC*, No. 16-cv-06795-EJD, 2017 WL 2311407, at *4 (N.D. Cal. May 26, 2017)). In XU's view, it met this standard by laying out the "alleging infringement of Claim 12 by Remote Expert." *Id.* On October 11, 2017, Cisco's request to dismiss all products other than Remote Expert was denied.[2] The order stated in pertinent part:

> In the context-specific task of reviewing a complaint for plausibility, a formal charting of patent claim elements against each accused product is not always necessary. Although XpertUniverse does challenge a broad range of products, it limits the scope to products that incorporate Remote Expert, a product for which it has mapped the claim elements of the '903 patent. XpertUniverse has met its burden of alleging infringement with respect to the products listed in its complaint.

Order on Mot. to Transfer, Stay, Dismiss, or Strike 10. (quotation omitted).

In November 2017, XU served infringement contentions accusing Remote Expert versions

---

[2] Cisco's motion to dismiss was granted with respect to XU's willful infringement claims. XU subsequently filed a First Amended Complaint, setting forth additional allegations concerning Cisco's willful infringement of the '903 Patent, which Cisco answered.

1.9 through 11, as well as UCCE and UCCX versions 10 and 11, of infringing claim 12 of the '903 patent. These contentions allege UCCE and UCCX *independently* infringe the '903 patent. In other words, XU accuses these products based on features other than the Remote Expert software. These infringement contentions include 13 appendices, labeled Appx A-1 through G-2, which map how each version of the accused products infringes claim 12.

In February 2018, Cisco filed a motion for judgment on the pleadings and XU filed a motion for partial summary judgment to preclude Cisco from challenging the validity of claim 12 of the '903 patent. The motion for judgment on the pleadings was denied, however XU's motion for partial summary judgment was granted. Then, in July, the action was stayed pending the United States Patent and Trademark Office's reexamination of the '903 patent. On May 30, 2019, the stay was lifted. Shortly thereafter, Cisco renewed the present motion to strike, which had been denied without prejudice in light of the stay.

### III. LEGAL STANDARD

Rule 12(f) permits a court to strike "any redundant, immaterial, impertinent, or scandalous matter" from a pleading. Motions to strike are also used to bar a party from asserting infringement where either claim preclusion or issue preclusion applies. *See Finjan, Inc. v. Blue Coat Sys. LLC*, 230 F. Supp. 3d 1097, 1102-04 (N.D. Cal. 2017). The purpose of a motion to strike is "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (quotation omitted). Motions to strike are generally disfavored "because of the limited importance of pleadings in federal practice and because they are often used solely to delay proceedings." *Capella Photonics, Inc. v. Cisco Sys.*, *Inc.*, 77 F.Supp.3d 850, 858 (N.D. Cal. 2014) (quotation omitted). Furthermore, "any doubt concerning the import of the allegations to be stricken weighs in favor of denying the motion to strike." *Park v. Welch Foods, Inc.*, No. 12-cv-06449, 2014 WL 1231035, at *1-2 (N.D. Cal. Mar. 20, 2014).

### IV. DISCUSSION

Cisco advances three arguments in support of its motion to strike Appendices F1, F2, G1,

and G2 to XU's infringement contentions. First, Cisco contends XU should be judicially estopped from arguing the UCC products *independently* infringe the '903 patent because this position is inconsistent with the position XU took in its opposition to the motion to dismiss. Second, Cisco argues issue preclusion bars XU from litigating whether the UCC products infringe the '903 patent because the court in the Delaware Case already determined through its summary judgment order that they do not. Third, the *Kessler* doctrine purportedly bars XU from alleging the UCC products infringe the patent based on that same summary judgment order.

### A. Judicial Estoppel

Judicial estoppel is an equitable doctrine that "prevents a litigant from 'perverting' the judicial process by, after urging and prevailing on a particular position in one litigation, urging a contrary position in a subsequent proceeding—or at a later phase of the same proceeding—against one who relied on the earlier position." *SanDisk Corp. v. Memorex Products, Inc.*, 415 F.3d 1278, 1290 (Fed. Cir. 2005). Courts typically consider three factors when deciding whether to apply judicial estoppel, specifically whether: (1) the later position is clearly inconsistent with the earlier position; (2) the party succeeded in persuading a court to accept the earlier position; and (3) the party seeking to assert the inconsistent position would derive an unfair advantage if not estopped. *See Zedner v. United States*, 547 U.S. 489, 504 (2006); *see also United States v. Liquidators of European Fed. Credit Bank*, 630 F.3d 1139, 1148-49 (9th Cir. 2011). Courts also consider whether the party who is asserting inconsistent positions did so intentionally. *Samson v. NAMA Holdings, LLC*, 637 F.3d 915, 935 (9th Cir. 2011).

Cisco's argument in favor of judicial estoppel is unpersuasive. XU's assertion that the UCC products independently infringe the '903 patent is not "clearly inconsistent" with the position it took in opposition to Cisco's motion to dismiss. Indeed, XU argued in opposition to the motion to dismiss that it had plausibly alleged infringement of products that incorporate "the Remote Expert [s]olution *and [r]elated [t]echnology*." Opp. Mot. to Transfer, Stay, Dismiss, or Strike at 19. XU went on to argue that, at the pleading stage, a plaintiff can identify a general class of unnamed applications as long as the products in the class are similar to a product named in the

complaint. XU believed it had satisfied this standard by "alleging infringement of Claim 12 by Remote Expert and other named products incorporating Remote Expert." *Id.* 20. At no point did XU state that it intended to limit the accused products to those that incorporated Remote Expert. Furthermore, XU specifically named the UCC product suit in the Complaint, therefore Cisco was on notice that these specific products were at issue. In sum, XU's current position that the UCC products infringe the '903 patent regardless of whether they incorporate Remote Expert is not "manifestly inconsistent" with its prior position. *Wyler Summit Partnership v. Turner Broadcasting Sys., Inc.*, 235 F.3d 1184, 1190 (9th Cir. 2000). Accordingly, the doctrine of judicial doctrine does not apply.

### B. Issue Preclusion

The doctrine of issue preclusion bars successive litigation "of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment." *Garity v. APWU Nat'l Labor Org.*, 828 F.3d 848, 858 n.9 (9th Cir. 2016) (quotation omitted); *see also In re Reynoso*, 477 F.3d 1117, 1122 (9th Cir. 2007). In the Ninth Circuit, a party seeking to establish issue preclusion must show that (1) the issue decided in the prior proceeding is "identical" to the one sought to be relitigated; (2) the prior proceeding resulted in a final judgment on the merits; and (3) the party against whom issue preclusion is asserted was a party to—or in privity with a party to—the first proceeding. *Roche Palo Alto LLC v. Apotex, Inc.*, 526 F. Supp. 2d 985, 994 (N.D. Cal. 2007) (citing *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 (9th Cir. 2006)).

The primary dispute regarding issue preclusion relates to whether the first requirement is satisfied. In analyzing this element, courts must first consider whether the issue in question was "actually litigated" and decided. *Reyn's Pasta Bella*, 442 F.3d at 746 & n.6. Issue preclusion generally does not attach to an issue that was uncontested in the prior litigation unless it is clear the parties intended the issue be foreclosed in subsequent litigation. *See United States v. Real Prop. Located at 22 Santa Barbara Drive*, 264 F.3d 860, 873 (9th Cir. 2001) (quotation omitted) ("A stipulation may meet the fully litigated requirement where it is clear that the parties intended

Case No. 17-cv-03848-RS

6

the stipulation of settlement and judgment entered thereon to adjudicate once and for all the issues raised in that action."); *see also United States v. Young*, 804 F.2d 116, 118 (8th Cir. 1986). Courts also consider whether the relevant features of the accused product are the same as those of the product at issue in the earlier case. *See, e.g., EON Corp IP Holdings LLC v. Apple Inc.*, No. 14-CV-05511-WHO, 2015 WL 4914984, at *6 (N.D. Cal. Aug. 17, 2015); *see also Phil-Insul Corp. v. Airlite Plastics Co.*, 854 F.3d 1344, 1353 (Fed. Cir. 2017) (explaining that the accused products must be "essentially the same" for issue preclusion to apply).

According to Cisco, the question whether the UCC products infringe claim 12 of the '903 patent was "necessarily decided" in the summary judgment order issued in the Delaware Case. In that order, the District of Delaware noted that "XU seems to concede that the products have optional functionalities, and that if the end user does not use those features, there is no direct infringement" by those users. *XpertUniverse*, 2013 WL 865974, at *2. Cisco construes this to mean that the UCC products, without the optional Expert Advisor and Remote Expert features discussed in that order, do not infringe the '903 patent. When read in context, however, it becomes clear the "products" referred to in that order are Expert Advisor and Remote Expert, not the UCC products. In other words, the court was explaining that use of *Expert Advisor* and *Remote Expert* does not result in infringement of the '903 patent unless certain optional features of those products were activated. The summary judgment order does not make any explicit findings regarding the UCC products. Indeed, the order makes no mention of these products. This is unsurprising given that the UCC products were not named in either the operative complaint or in XU's infringement contentions in that case.

Cisco argues that, even though the UCC products were not named in XU's pleading or infringement contentions, or in the court's summary judgment order, they were still "at issue" in that case. First, XU's expert stated that Expert Advisor was "part of . . . UCCE." Ginnings Decl., Ex. 15 at 1061:24-1062:1.[3] Furthermore, XU characterizes Expert Advisor as "part of a larger

---

[3] The relevant Ginnings Declaration can be found at Docket 114.

product suite" of products which includes the UCC products. Opp. Mot. Strike 22-23. Finally, Cisco notes that, in the Delaware Case, XU moved to compel sales data regarding UCC products that contained Expert Advisor software. Therefore, Cisco argues, the UCC products "were at issue" in that case and were "an integral part of the functionality XU accused of infringement." Mot. Strike 12.

This argument is unpersuasive. Although it is undisputed that Expert Advisor was included in some UCC products at the time of the Delaware Case, there is no indication that either the parties or the court intended to adjudicate whether the UCC products independently infringed the '903 patent. In other words, the UCC products were at issue only to the extent they incorporated the challenged Expert Advisor technology. The question whether the UCC products independently infringe the '903 patent was not "actually litigated" or "necessarily decided" in the Delaware Case, therefore issue preclusion does not apply.

### C. *Kessler* Doctrine

The *Kessler* Doctrine is a doctrine that "fills the gap between [the claim and issue] preclusion doctrines [], allowing an adjudged non-infringer to avoid repeated harassment for continuing its business as usual post-final judgment in a patent action where circumstances justify that result." *Brain Life, LLC v. Elekta Inc.*, 746 F.3d 1045, 1056 (Fed. Cir. 2014). When a defendant succeeds in establishing non-infringement, "the specific accused device(s) acquires the status of a non[-]infringing device vis-à-vis the asserted patent claims." *Brain Life*, 746 F.3d at 1057 (quotation omitted). Similarly, new products that are "essentially the same" as the product in the prior suit acquires the status of a non-infringing device. *Id.*

As explained in the issue preclusion section, Part IV.B, *supra*, the UCC products were neither named in the operative complaint nor in XU's infringement contentions. Rather, the sole relevance of these products was that they were capable of incorporating the challenged Expert Advisor software—which was the focus of that litigation. Furthermore, the summary judgment order in that case made no reference to the UCC products; rather it held that XU's *indirect* infringement claims regarding *Expert Advisor* (and other products not at issue in this action) failed

as a matter of law because XU could not show Cisco customers actually used the infringing features of those products. This holding did not address whether the UCC products independently infringe the '903 patent. Given these facts, the issuance of a final judgment in Cisco's favor with respect to XU's indirect infringement claims did not confer non-infringing status on the UCC products. Accordingly, the *Kessler* Doctrine does not apply.

### D. Motion to Seal

On June 14, 2018, Cisco requested leave to file Exhibit 25 to the Declaration of C. Austin Ginnings in support of Cisco's Motion to Strike Appendices F1, F2, G1, and G2 under seal. Although Cisco does not contend this exhibit includes any confidential or proprietary information, XU had previously designated this exhibit as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" pursuant to the terms of the Protective Order entered in this case. XU did not, however, file the requisite declaration to support this motion under Civil Local Rule 79-5(e). The motion to seal Exhibit 25 to the Ginnings declaration is therefore denied.

## V. CONCLUSION

For the reasons set forth above, the motion to strike is denied.

**IT IS SO ORDERED**.

Dated: July 29, 2019

RICHARD SEEBORG
United States District Judge