UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| XPERTUNIVERSE, INC.,<br><br>Plaintiff,<br><br>v.<br><br>CISCO SYSTEMS, INC.,<br><br>Defendant. | Case No.  17-cv-03848-RS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR LEAVE TO AMEND INFRINGEMENT CONTENTIONS** |

## I. INTRODUCTION

The present motion relates to a nearly ten-year old patent action between XpertUniverse, Inc. ("XU") and Cisco Systems ("Cisco") in which XU alleges Cisco infringes U.S. Patent No. 7,499,903 (" '903 Patent"). In January 2026, a six-year stay pending related *ex parte* reexaminations with the U.S. Patent and Trademark Office ("Patent Office") was lifted, and XU now moves for leave to amend its infringement contentions in light of newly released product versions that allegedly infringe the '903 Patent. For the following reasons, the motion is granted in part and denied in part.

## II. BACKGROUND

XU filed this lawsuit on July 6, 2017, asserting that Cisco infringes Claim 12 of the '903 Patent. XU served its original infringement contentions on November 24, 2017. After the parties completed all their claim construction disclosures and briefing, Cisco filed its first reexamination request at the Patent Office on June 1, 2018, challenging the validity of Claim 12 ("First Reexam"). The case was stayed pending the First Reexam.

After the first stay was lifted in May 2019 following the conclusion of the First Reexam, XU requested to amend its infringement contentions to name three additional products, the Packaged Contact Center Enterprise ("PCCE"), Hosted Collaboration Solution for Contact Center ("HCS-CC"), and Customer Journey Platform ("CJP") products. The request was granted in part and denied in part in July 2019. XU was granted leave to amend its infringement contentions to accuse the CJP product, which was acquired by Cisco in February 2018, and version 12 of the PCCE and HCS-CC products, the newest version of the PCCE and HCS-CC products which were released while the case was stayed. The request was denied as to other prior versions of the PCCE and HCS-CC products because XU had not adequately identified them in its initial contentions and that failure resulted from a lack of diligence. Dkt. 168 at 10. After the conclusion of the First Reexam, the parties also were ordered to redo their claim construction disclosures, discovery, and briefing.

In early 2020, the parties engaged in a series of meet-and-confers regarding XU's desire to amend its infringement contentions. In February and March 2020, the parties filed joint letters with the Court in which XU agreed to provide tables ("Stipulated Summary Tables") "that specifically identif[y] where each of the listed claim limitations are allegedly found in each of the accused products" and "serve as a reference for the Court and the record to the extent a dispute arises later with respect to XU's infringement contentions." Dkt. 219 at 1 (quoting Dkt. 213 at 1–2). On March 17, 2020, the parties jointly filed stipulated second amended infringement contentions and related Stipulated Summary Tables. They stipulated that "XU is limited to the specifically identified mappings in these attached exhibits and will not pursue any infringement theories or mappings for those listed claim limitations that are not specifically and explicitly identified." Dkt. 223 at 1.

Meanwhile, in December 2019, Cisco sought a second reexamination, again challenging Claim 12, which was granted in February 2020. XU moved to stay the case in May 2020, and in June 2020 the stay was granted ("June 2020 Stay") pending the Second Reexam. The Second Reexam and June 2020 Stay lasted six years. After the Second Reexam concluded in October

2025, Cisco made a third request for *ex parte* reexamination, which was denied in November 2025.

In January 2026, the stay was lifted, and the parties were ordered to submit a joint proposed case schedule. The parties, however, could not come to an agreement. XU proposed redoing both claim construction and its infringement contentions, in light of newly released, allegedly infringing products and product versions, and proposed no cutoff for fact discovery. Cisco sought a June 2026 end of fact discovery, proposed case milestones through summary judgment, and opposed XU's efforts to redo claim construction and amend infringement contentions.

On February 9, 2026, XU contacted Cisco, identifying allegedly "new infringing products and/or new versions of accused products that Cisco released during (or shortly before) the second stay." Dkt. 275-4 at 68. On February 17, 2026, Cisco reminded XU that it cannot "accuse additional products of infringement without complying with the Patent Local Rules." Dkt. 275-4 at 72. On March 27, 2026, XU proposed to Cisco over 1,000 pages of amended infringement contentions, seeking to amend its infringement contentions to include six products: Unified Contact Center Enterprise ("UCCE") version 15; Unified Contact Center Express ("UCCX") version 15;  Packaged Contact Enterprise ("PCCE") version 15; WebEx Contact Center ("WXCC") new post-2020 release; Webex Contact Center Enterprise ("WXCCE"); and Webex Contact Center Enterprise for Government ("WXCCE-G"). On April 24, 2026, XU also provided Cisco with the related Stipulated Summary Tables as required by the parties' March 2020 stipulation.

On April 29, 2026, Cisco shared with XU its view that XU was not seeking merely to add new versions of previously accused products as represented but instead to introduce new infringement theories and accuse three additional products, namely WXCC, WXCCE, and WXCCE-G. On May 1, 2026, the parties met and conferred, but they were unable to reach an agreement. That same day, XU filed the present motion, which Cisco opposes.

### III. LEGAL STANDARD

A party may amend its infringement contentions "only by order of the Court upon a timely

showing of good cause." Patent L.R. 3-6. Non-exhaustive examples of circumstances that may, absent undue prejudice to the non-moving party, support a finding of good cause include: an adverse claim construction; recent discovery of material prior art despite an earlier diligent search; and recent discovery of nonpublic information about the accused product that, despite diligent efforts, was not discovered before service of the infringement contentions. *Id.*

The good cause analysis proceeds in two steps. First, the party must "proceed with diligence in amending [their infringement] contentions when new information comes to light in the course of discovery." *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1365–66 (Fed. Cir. 2006). The moving party bears the burden of establishing diligence. *Id.* at 1355. If diligence in amending the contentions is found,[1] the next question is whether "the nonmoving party would suffer prejudice if the motion to amend were granted." *Apple Inc. v. Samsung Elecs. Co. Ltd*, No. 12-cv-0630-LHK (PSG), 2013 WL 3246094, at *1 (N.D. Cal. June 26, 2013) (internal quotation marks omitted). "Prejudice is typically found when amending contentions stand to disrupt the case schedule or other court orders." *Karl Storz Endoscopy-Am., Inc. v. Stryker Corp.*, No. 14-CV-00876-RS (JSC), 2016 WL 7386136, at *3 (N.D. Cal. Dec. 21, 2016). "Courts have allowed amendments when the movant made an honest mistake, the request to amend did not appear to be motivated by gamesmanship, or where there was still ample time left in discovery." *Id.* (citation and internal quotation marks omitted).

The Patent Local Rules "seek to balance the right to develop new information in discovery with the need for certainty as to the legal theories." *O2 Micro*, 467 F.3d at 1365–66. "[T]he philosophy behind amending claim charts is decidedly conservative, and designed to prevent the 'shifting sands' approach to claim construction." *LG Elecs. Inc. v. Q–Lity Computer Inc.*, 211 F.R.D. 360, 367 (N.D. Cal. 2002) (citation omitted). Accordingly, the standard is decidedly less liberal than that for leave to amend pleadings. *See Advanced Micro Devices, Inc. v. LG Elecs., Inc.*, No. 14-CV-01012-SI, 2017 WL 732896, at *2 (N.D. Cal. Feb. 24, 2017).

---

[1] Where the moving party is unable to show diligence, there is "no need to consider the question of prejudice," although a court in its discretion may elect to do so. *See id*. at 1368.

**IV. DISCUSSION**

Cisco opposes XU's motion only where, according to Cisco, the proposed amendments introduce new products, as opposed to new versions of previously accused products, and new infringement theories. XU maintains that the newly accused product versions are newer versions of previously accused products and the allegedly new infringement theories merely reflect new features. Although these disputes are relevant to whether the parties' March 2020 stipulation, which allows amendments for new versions of previously accused products, applies to XU's request to amend, the Court's focus is on whether XU has made the requisite good cause showing for amendment under Patent Local Rule 3-6. In other words, the analysis focuses on whether XU sought its amendments with diligence and whether Cisco would be prejudiced by the amendments.

**A. Newly Accused Product Versions**

**1. Diligence**

Diligence in seeking to amend infringement contentions has two parts: it requires diligence in discovering the basis for amendment as well as diligence in seeking amendment once the basis for amendment has been discovered. Here, Cisco argues that XU fails to explain its delays before the June 2020 Stay and those after the stay was lifted in January 2026. Beginning with the latter, Cisco is not persuasive. XU has shown that shortly after the June 2020 Stay was lifted, it exercised reasonable diligence in seeking the proposed amendments. XU engaged Cisco in February 2026 about its proposed amendments, exercised diligence in attempting to come to a stipulated agreement between February 2026 and May 2026, and exercised diligence in filing this motion on May 1, 2026 when XU and Cisco failed to reach an agreement after meeting and conferring. Accordingly, a showing of sufficient diligence turns on the latter, i.e., whether XU has met its diligence burden despite its delays prior to June 2020.

There is no dispute that UCCE version 15, UCCX version 15, and PCCE version 15 are newer versions of previously accused products and that these later versions were released in 2025 during the June 2020 Stay. In fact, Cisco does not oppose XU's amendments to include these newer product versions.

As for WXCC post-2020 release, WXCCE, and WXCCE-G, however, the parties dispute

CASE NO. 17-cv-03848-RS

to which earlier products these versions relate and whether XU acted with diligence to amend its infringement contentions to include them. WXCC post-2020 release and WXCCE-G were released during the June 2020 Stay while, according to XU's own admission, WXCCE was released in January 2020. Cisco argues these three product versions are new versions of WXCC and WXCCE products, released in April 2018 and January 2020, respectively. Thus, according to Cisco, XU must show diligence despite its delays since April 2018 and January 2020. By contrast, XU argues, at least to some extent persuasively, that WXCC post-2020 release, WXCCE, and WXCCE-G are earlier versions of CJP, which XU did include in its earlier infringement contentions.

Cisco's own opposition shows that these products are versions of CJP. Cisco includes in its opposition excerpts from XU's prior infringement contentions that include the following product descriptions: CJP "locates a live expert in an organization and routes a customer, employee, or individual (i.e., a seeker) to the expert, based on the needs of the seeker"; WXCC is "a match and route system that locates a live expert/agent and routes a customer, employee or individual other contact (i.e., a seeker) to the expert, based on the needs of the seeker"; WXCCE is "a match and route system that locates a live expert/agent and routes a customer, employee, or individual other contact (i.e., a seeker) to the expert, based on the needs of the seeker"; and WXCCE-G is "routing services based on WXCCE and/or UCCE." Dkt. 284, Opp., at 15–16. Cisco insists that the excerpted charts "recognize these are different products" seemingly because the charts use different product names. *Id.* at 16. Cisco has highlighted those product names to emphasize its point. *See id.* Yet, Cisco fails to acknowledge, let alone refute, the descriptions immediately following its highlights which make clear that these product versions are later versions of the CJP match and route system.

Since XU included earlier versions of WXCC post-2020 release and WXCCE-G in its prior infringement contentions and these two product versions were released during the June 2020 Stay, XU's failure to seek amendment earlier to include these two versions does not reflect a lack of diligence. XU's prior contentions put forth its position as to the underlying CJP technology, and

United States District Court
Northern District of California

the amendments it seeks now with regard to WXCC post-2020 release and WXCCE-G could not have been made earlier since these later versions were released during the June 2020 Stay.

However, before the June 2020 Stay, which XU requested in May 2020, XU had five months to seek amendment to include WXCCE. This delay without further explanation is generally incompatible with the diligence required to show good cause. *See DCG Sys. v. Checkpoint Techs., LLC*, No. C 11-03792 PSG, 2012 WL 1309161, at *3 (N.D. Cal. Apr. 16, 2012) ("[I]n the bulk of these cases leave to amend was denied because the patentee either unreasonably delayed amending the infringement contentions—five months to one year—or there were errors or omissions that patentee's counsel admitted was his own oversight." (collecting cases)). XU blames its delay on Cisco's refusals to supplement its discovery. *See* Dkt. 274, Mot., at 20. However, XU also admits it relied on publicly available material and "diligent monitoring" to identify WXCCE's release and does not argue that that material only became available after it requested the June 2020 Stay or that with diligence it could not have been discovered earlier. *See id.* at 19–20. Accordingly, while "[i]t is certainly possible that time was required" to identify the alleged WXCCE infringements, XU has "failed to establish that it required [five months] to do so." *See O2 Micro*, 467 F.3d at 1367.

In sum, XU has established diligence with regard to its proposed amendments to include UCCE version 15, UCCX version 15, PCCE version 15, WXCC post-2020 release, and WXCCE-G but not WXCCE. The analysis need not go further with regard to WXCCE-G.

### 2. Prejudice

With no dispute that UCCE version 15, UCCX version 15, and PCCE version 15 are later versions of earlier accused products and finding that WXCC post-2020 release and WXCCE are later versions of the earlier accused CJP products, Cisco's arguments that it is prejudiced because XU's proposal improperly expands the scope of the case is unavailing. The same or substantially similar products remain at issue.

Moreover, as XU persuasively explains, its proposed amendments should not affect dramatically deadlines for fact discovery, expert discovery, summary judgment, or trial. The

United States District Court
Northern District of California

parties have not taken any fact depositions other than for claim construction in 2019. Nor have they reviewed the source code of the accused products. Any additional discovery needed relating to the newly released product versions can be completed alongside these outstanding tasks, with minimal impact on the fact or expert discovery periods. Accordingly, Cisco will not be prejudiced by allowing amendment. *See Karl Storz Endoscopy-Am*, No. 14-CV-00876-RS (JSC), at *3 ("Courts have allowed amendments…where there was still ample time left in discovery." (citation and internal quotation marks omitted)).

### B.  New Legal Theories

XU argues that the "new legal theories" in its proposal, as described by Cisco, merely reflect new features that were not present in the previously accused product versions. To the extent this is true, XU has demonstrated diligence in seeking amendment shortly after the lifting of the June 2020 Stay, during which the new product versions—with the new features—were released. As for prejudice, to be sure, XU's position that new features warrant changes to its infringement theories indicates some change in the scope of the case, but, since substantial fact discovery remains, Cisco would not be prejudiced by the amendments. *See Karl Storz Endoscopy-Am*, No. 14-CV-00876-RS (JSC), at *3. Good cause exists to amend the infringement contentions to include these legal theories to the extent they reflect new infringing features of the new product versions.

### V. CONCLUSION

For the foregoing reasons, XU has shown good cause in seeking amendment of its infringement contentions to include UCCE version 15, UCCX version 15, PCCE version 15, WXCC new post-2020 release, and WXCCE-G and to include new legal theories reflecting new features of these product versions. The parties are ordered to meet and confer in light of this Order and to submit jointly proposed amended infringement contentions or letter briefs reflecting any ongoing disputes by July 15, 2026. To the extent the parties cannot come to an agreement, the matter will be referred to the assigned magistrate judge for determination.

United States District Court
Northern District of California

CASE NO. 17-cv-03848-RS

United States District Court
Northern District of California

**IT IS SO ORDERED**.

Dated: June 2, 2026

_____
RICHARD SEEBORG
Chief United States District Judge

CASE NO. 17-cv-03848-RS